THE RECTOR, CHURCH WARDENS AND VES-
TRYMEN OF MOUNT CALVARY CHURCH v.
ALBERS, Appellant.

### Division One, April 1, 1903.

1. **Trust Fund:** CONTRIBUTIONS: RIGHT OF TREASURER. Where a certain
amount of money is contributed to a church to be used in building
a church edifice, and the vestry turns it over to a treasurer to be
kept, he has no right to withhold it on the ground that the vestry
intends to divert it from the purposes for which it was contributed.
If such contribution created a trust it became such only between
the vestry and the contributor, and the vestry is responsible to
him if it diverts the fund. The treasurer's duty is to return to his
principal his principal's money when due, whether it be trust funds
or not.

2. ————: HOW CREATED. Parol evidence is not admissible to establish
an express trust. To constitute a treasurer of a fund a trustee
for a special purpose, or to make the fund a trust fund, the grant
or assignment must be in writing.

3. **Guaranty:** EXTENSION OF PRINCIPAL CONTRACT. A guaranty may
be as broad as, or breader or narrower than, the contract between
the principal debtor and his creditor. The terms of the guaranty
measure the liability of the guarantor, and constitute a contract
between him and the person assured; but they do not constitute the
contract between the debtor and the assured, or enlarge or narrow
that contract.

4. ————: ————: CASE STATED. Defendant first as treasurer of a
church agreed to give bond, and afterwards, when one of his settle-
ments was made, presented the guaranty of a private citizen written
thereon guaranteeing that defendant "will properly account for and
pay over any money he may receive or have belonging to the Mount
Calvary building fund, for bills incurred in building new church,
when approved by the vestry," and this guaranty was accepted by
the vestry in lieu of a bond. The vestry further agreed that, as
he was unable to obtain more than four per cent he might borrow
the money in his hands at five per cent, and the evidence outside
this guaranty does not sustain his claim that he was to have the
money until the new church was begun. *Held*, that while by the
terms of the guaranty the church could only hold the guarantor liable
on his guaranty by showing that the defendant had failed to pay

over money for bills incurred in building a new church when approved by the vestry, this guaranty· in no manner enlarged or narrowed the defendant's contract with the vestry, and in no manner proves or establishes the fact or the law to be that the church was not entitled to demand, sue for and recover the money from defendant, on his removal as treasurer, whether it was required to be paid out for the construction of a church or not. ,

Appeal from St. Louis City Circuit Court.—*Hon. Selden P. Spencer*, Judge..

AFFIRMED.

*Jos. S. Laurie* for appellant.

There was a contract between plaintiff and defendant, which entitles the latter to the beneficial use of the money in question until such time as he may be required to pay out the same for bills incurred for building a new church. (1) The guaranty taken in connection with its acceptance, shows of itself a contract between the vestry and defendant, corresponding to the terms of the guaranty. "The contract of a guarantor, as embodied in the guaranty, is collateral to the agreement of a principal; it is a separate contract, and is in the nature of a warranty that the principal will perform his contract." 14 Am. and Eng. Ency. of Law (2 Ed.), p. 1130; Brandt on Suretyship, sec. 1. A guaranty is necessarily based or predicated upon an existing obligation resting upon a third party, and is a promise to answer for the default of said party in the performance of such obligation. The guaranty naturally conforms to the terms of the obligation. (2) This agreement or contract is also established affirmatively by all the evidence in the case.

*T. K. Skinker* for respondent.

(1)· The question whether there is a contract between plaintiff and defendant which entitles the latter

to the beneficial use of the money demanded in this suit until such time as he may be required to pay out the same for bills incurred for building a new church, is not now open to investigation. It is a question of fact upon which the referee reported fully and explicitly, and as this was not a case of compulsory reference, and there was evidence in support of plaintiff's contention, the finding of the referee is a finality, and will not be disturbed by this court. It stands on the footing of a special verdict. Utley v. Hill, 155 Mo. 277; Dempsey v. Schawacker, 140 Mo. 680; Berthold v. O'Hara, 121 Mo. 97; Howard County v. Baker, 119 Mo. 407; Freeman v. Moffitt, 119 Mo. 294; Darling v. Potts, 118 Mo. 530; Vogt v. Butler, 105 Mo. 479; Lingenfelder v. Brewing Company, 103 Mo. 589; Young v. Powell, 87 Mo. 130; Chew v. Ellingwood, 86 Mo. 269; State v. Burckhardt, 83 Mo. 430; Ferry Company v. Railroad, 73 Mo. 410; Gimbel v. Pignero, 62 Mo. 242; Franz v. Dietrich, 49 Mo. 95; Western Boatmen's Assn. v. Kribben, 48 Mo. 37.   (2)   If the question of the existence of the alleged contract be investigated, it will be found in the negative.   (a)   It is not to be inferred from the terms of the Kauffman guaranty.  Burnham v. Gosnell, 47 Mo. App. 637; Osborne v. Lawson, 26 Mo. App. 549; Brandt on Guaranty, secs. 145, 166; Boyle v. Bradley, 26 Up. Can. (C. P.) 372; Hill v. Combs, 92 Mo. App. 256; Graham v. Ringo, 67 Mo. 324; Bank v. Shine, 48 Mo. 463; Kilbride v. Moss, 113 Cal. 432, 54 Am. St. 361; Wright v. Shorter, 56 Ga. 76; Sea v. Glover, 1 Ill. App. 335; Little v. Bradley (Fla.), 31 So. 342; Smith v. The More Company, 9 O. C. D. 751; Star v. Milliken, 180 Ill. 458; Spencer v. Holman, 113 Wis. 340.   (b)   The overwhelming weight of the evidence is against it.   (3) The judgment should be affirmed with ten per cent damages, as for a vexatious appeal.   R. S. 1899, sec. 867.

MARSHALL, J.—This is an action to recover $7,-772.13, with five per cent interest.   The answer admits

that the amount claimed is correct, but sets up two specific defenses, to-wit: first, that the plaintiff loaned him the money, he to pay five per cent interest per annum for the use, "until such time as the same might be required to be paid out for the construction of a church building for plaintiff," and that the plaintiff is not ready or able to construct such a building, therefore the debt is not due; and, second, that the fund was contributed by various persons for the construction of a new church, and was deposited with him "upon the terms and conditions hereinbefore stated" by plaintiff, "with the consent and approval of the contributors to said fund, and that defendant thereby became a trustee as to such fund for both the plaintiff and said contributors, and as such trustee is not authorized to pay over said sum except in payment for the construction of a new church building;" and that the plaintiff has no intention of so applying said money but intends to misapply it to other purposes. The answer then alleges a willingness "to pay over the same whenever it is needed for the purpose for which it was subscribed," and in the meantime to give any security therefor that the court may require.

The reply denies that the fund was donated to the church to be used only for the construction of a new church, but alleges that its former church was destroyed by the cyclone, in May, 1896, and that it owns a lot of ground at another place, on which there is a church building, but says it is insufficient and unsuitable for its uses, and that the plaintiff is ready and able to commence the erection of a new church on said lot, but is prevented from so doing because the defendant withholds its said money, which, it alleges, the defendant does because of his fractious opposition to the rector and with the intent to force the congregation to discharge the rector. The reply then denies all the allegations of the answer not specially admitted.

By consent of parties the whole case was referred to a referee, who found all the issues of fact for the plaintiff and recommended a judgment as prayed. The trial court overruled the exceptions to the referee's report and entered judgment for the plaintiff, for $7,-969. 63, being the admitted amount in suit, with five per cent interest added. The defendant appealed.

The case made is this: The plaintiff is a religious corporation, organized under the laws of this State. The defendant was for many years a member of the vestry. Prior to the cyclone the plaintiff had two places of worship, a church on the corner of Lafayette and Jefferson avenues, and a chapel on Grand avenue at the terminus of Lafayette avenue. The church was incumbered by a mortgage. The church was owned by a corporation known as the "Mount Calvary Building Association," which had a capital stock of two hundred shares, of which the defendant owned ninety-five shares; Joseph Franklin and George M. Wright, owned fifty shares, and the plaintiff owned the balance. The cyclone destroyed the church. Thereafter, principally through the personal efforts of the rector, various persons contributed various sums of money to the church, which was kept separate from the ordinary revenues of the church and treated by the vestry as the building fund. On July 27, 1896, the defendant was appointed by the vestry, treasurer of the building fund, and ordered to give bond in the sum of ten thousand dollars, with a trust-company as surety, the vestry to pay the expense of securing the bond. On September 7, 1896, the general treasurer of the church turned over to the defendant, the treasurer of the building fund, the contribution that had been received, amounting to $2,761.96. On April 13, 1897, the defendant, as treasurer of the building fund, reported to the vestry that he had received $3,769.75, and had paid out on orders of the vestry for various purposes other than for the erection of a new church, the sum of $1,057.60, leaving a bal-

ance in his hands of $2,712.15. He had never given bond as such treasurer, but when he made this report, there was written at the bottom of the report, the following guaranty:

· "I guaranty that C. H. Albers will properly account for and pay over any money he may receive or have, belonging to the Mount Calvary building fund, for bills incurred in building new church, when approved by the vestry of Mount Calvary Church.   J. W. Kauffman."

This guaranty was accepted by the vestry in lieu of the bond originally required.  In July, 1897, the mortgage on the church was foreclosed.  Messrs. Franklin and Wright donated to the plaintiff their share of the proceeds of the sale after paying the mortgage, amounting to $1,617.77, and the share of the plaintiff in such excess amounted to $2,794.33.  These sums, amounting to $4,412.10, were turned over to the defendant as treasurer of the building fund.  The fund in controversy was, therefore, made up of contributions, the donation of Messrs. Franklin and Wright, and the share of the plaintiff in the excess aforesaid.  There is absolutely no evidence in the record that any of the contributors limited the use of their contributions to the erection of a church, nor that any of them constituted the defendant their trustee to hold the contributions for any such purpose.  Messrs. Franklin and Wright testified that they "donated it" [their donation] "in to the fund for the benefit of the church—the building fund of the new church—something of that kind."  But there is no evidence that they constituted the defendant a trustee of their donations, nor that they even had any dealings with the defendant in that matter in any way. On the contrary, their donations were turned over to Mr. Lipman, who was acting as the agent of and was a member of the vestry, in looking after the interest of the church in the sale under the mortgage, and he turned their donations, as well as the plaintiff's share of such

excess, over to defendant as the treasurer of the building fund, and properly reported his action in this regard to the vestry on July 6, 1897.

At various times prior to April 3, 1899, the vestry ordered defendant—once or twice on his own motion—to pay out of the building fund various sums, amounting in all to $2,259.41, for purposes other than for building a new church, and the defendant obeyed the orders and paid the money.

At some time, the date is not altogether clear, but at any rate it was before April 13, 1897, when the Kauffman guaranty was delivered to the vestry, the defendant reported to the vestry that he could not get more than four per cent interest for the use of the money, but that the banks charged him five per cent for money when he borrowed from them, and if they would let him use the money he would pay five per cent for the use of it; and he said that in this way the vestry would get one per cent more interest than if they loaned it or placed it in a bank or trust company, and would also save the expense of having to pay for a ten thousand dollar bond for him as treasurer of the building fund. The vestry accepted this proposition. The defendant claimed, for the first time, in his answer that the contract contained the further clause that he should have the use of the money "until such time as the same might be required to be paid out for the construction of a church building." And the defendant and his witness, Mr. Lipman, gave testimony which gave some color to that claim, but which, at best, amounted in law to only a scintilla of evidence in support thereof, as the following excerpts will show: The defendant testified on cross-examination as follows:

"Q. Will you state now what you did say at that meeting about paying interest? A. I stated that I would pay five per cent interest on that fund.

"Q. That is all you stated? A. Yes, sir.

Vol 174 mo—22.

"Q. Is that all you said about the terms on which you would keep that fund? A. That I could not state. The statement was embodied in that agreement there, and I do not remember what was said afterwards.

"Q. You do not remember what was said to the vestry about it? A. I could not remember the words.

"Q. Then you do not pretend to swear now that you said to the vestry that you would pay five per cent interest on condition that you were to keep that fund until it was needed in the building of the new church? A. The words used I could not swear to at this late date.

"Q. Will you swear you used any such language as that that I have used? A. I do not remember, sir.

"Q. Will you swear you used any language that means the same as the language I have just used? A. I do not, sir, remember.

"Q. You do not remember? A. No, sir.

"Q. Now, is it true that all you remember about it is what you see written in that paper? A. That is about the principal recollection I have; that I would keep that fund and allow five per cent on it until used for building the new church. ·

"Q. And you annex that qualification because you find it in that Kauffman guaranty? A. No, because that was in my mind always for the reason that all that money had been subscribed for that purpose alone, as far as I remember it."

Mr. Lipman testified for defendant as follows.

"Q. I will ask you how long it was stated, if it was stated, that this fund should remain in the custody of Mr. Albers—when he should pay it out? A. Well, I do not remember at any time that there was absolute time stated how long he should hold it, or when it should be paid out, but I do know when this fund was placed in his hands it was with the understanding he was to take care of it until such time as we required it for the building of a new church; that was the distinct understanding, al-

though I have no knowledge of any such thing being written.''

On the other hand, the plaintiff's witnesses, Mr. Fauntleroy, Mr. Dempster, and Mr. Dennison, testified that there was no agreement made as to how long the defendant should have the use of the money. And the minutes of the vestry and parish meetings, and the defendant's reports as such treasurer, show that after the time the defendant says such an agreement was made, he paid $2,259.41 out of the money he was so authorized to use on orders of the vestry, for general purposes, and not for building a new church.

The uncontradicted evidence shows that the defendant never set up any right to keep the money until it was required to be paid out for the construction of a new church, until he asserted it in his answer. At all times prior thereto he had taken the position that it was a trust fund, and that the vestry wanted to divert it from the purposes of the trust, and that he felt morally bound to protect the fund, and to see that it was properly applied to the purposes for which it was contributed. This was his position after the parish had refused to re-elect him a member of the vestry, and after the vestry had removed him from the office of treasurer of the building fund and had abolished that office, and had ordered him to turn over the fund to the treasurer of the church, and later when he refused even to turn it over to the bishop of the church, saying it would be no safer in his hands than it was in the plaintiff's hands. He also took the same position on the day after this suit was commenced, in an interview in the public press, and also two days later in a letter to the press. He did offer to turn it over to a trust company, but when it was arranged by the treasurer of the church with the trust company and the company prepared the form of the certificate to be given, he refused to do so upon those terms, and also refused to specify upon what terms he would do so. After, or about the time, this suit was

begun, he deposited the money with a trust company, took the certificate in his own name, and placed the certificate in the hands of Mr. Franklin.

## I.

Trust Fund.

Three conclusive reasons are apparent why the money is not a trust fund in the hands of the defendant: first, there is absolutely no evidence to support such a claim; second, the defendant himself has not treated it as a trust fund, but has paid out nearly one-fourth of the total amount for general church purposes, other than for the purposes of the alleged trust; and, third, it is alleged to be an express and not an implied trust, and under the statute, "all grants and assignments of any trust or confidence shall be in writing, signed by the party granting or assigning the same, or by his or her last will, in writing, or else they shall be void." [R. S. 1899, sec. 3416.] And construing this statute this court has held that parol evidence is not admissible to establish an express trust. [Rogers v. Ramey, 137 Mo. 598; Woodford v. Stephens, 51 Mo. l. c. 448.]

The only evidence of a trust shown by the testimony is as to the $1,617.77 donated by Messrs. Franklin and Wright, and if that created a trust it was such only as between them and the plaintiff, and the plaintiff was responsible to them if it violated the trust, but even conceding this to be true, it afforded no reason or right or excuse for the defendant, as the special agent of the plaintiff, to withhold the plaintiff's money from it, and the claim that by so doing he was subserving a moral obligation by preventing his principal from violating the principal's trust, is no excuse, especially as by so doing he violated his legal duty to his principal to return to his principal his principal's money—whether it be trust funds or not. It was wholly beyond the power or province of the defendant to refuse to turn over the money for any such reason. If the fact had

been, as the answer alleges, that the money was placed in his hands by the plaintiff with the consent and approval of the contributors, that would have also been insufficient under the statute to constitute it a trust fund or to make the defendant a trustee, because the grant or assignment was not in writing, and the money was the money of the plaintiff.

There is not a word of evidence in this record tending in the slightest to show that any contributor, or Messrs. Franklin and Wright, ever gave the defendant any authority to hold or withhold the money as a trust fund. On the contrary, they donated the money to the church, and it passed into his custody, and the church appointed the defendant its special agent, and placed the money in his hands. The defendant was therefore never constituted a trustee by any one, and it was incompetent for him to constitute himself a trustee and hold the plaintiff's money for any purpose except such as the plaintiff directed, and he was guilty of a violation of his clear legal duty when he refused to turn it over to his principal.

## II.

The defendant claims that the plaintiff loaned him this money, "until such time as the same might be required to be paid out for the construction of a church building," and that it is not yet required for such purpose, he agreeing to pay five per cent a year interest for the use of the money.

The oral evidence does not sustain this claim. The minutes of the vestry and parish meetings, and the defendant's own reports and conduct with reference to this fund, do not sustain the claim. The referee found this issue against the defendant. The best that can be said for defendant of the case is that the evidence is conflicting. The trial court approved the finding of the referee. This court will not weigh the evidence nor disturb the finding of fact in this regard. [Dempsey

v. Schawacker, 140 Mo. l. c. 686; Utley v. Hill, 155 Mo. l. c. 277.]

The defendant, however, says that he does not expect this court to review the findings of fact by the referee, but does ask this court to review the conclusions of law of the referee and to apply the true law to the findings of fact made by the referee.

The gist of all which is that defendant contends that the guaranty signed by Kauffman and delivered by the defendant to the vestry and its acceptance by the vestry, constitute, as a matter of law, a contract between the defendant and the plaintiff that he should retain and use the money until such time as it might be required -to be paid out for the construction of a church building.

The Kauffman guaranty prescribed what the guarantor agreed to be bound for. It did not attempt in any way to recite what the defendant's contract with the plaintiff was, nor to define the rights or duties of the parties *inter sese*. A guaranty may be as broad as, or broader or narrower than, the contract between the principal debtor and his creditor. The terms of the guaranty measure the liability of the guarantor, but do not constitute the contract between the debtor and creditor. The contract of guaranty is a contract between the guarantor and the person assured. The person whose conduct or acts are assured is not a necessary party to a contract of guaranty. The contract between the person thus assured and the person whose acts are assured is a separate matter. [1 Brandt on Suretyship and Guaranty (2 Ed.), secs. 145-166; Bank v. Shine, 48 Mo. 464; Hill v. Combs, 92 Mo. App. 242; Graham v. Ringo, 67 Mo. 324.]

The guarantor may be discharged by the creditor giving time to the debtor or by any change in the contract which varies the terms of the guaranty, but this will not affect the liability of the debtor to the creditor. Therefore, whilst by the terms of the guaranty, the plaintiff could only hold Kauffman liable on his con-

tract of guaranty by showing that the defendant had failed to pay over the money for bills incurred in building a new church, when approved by the vestry of Mount Calvary Church, this in no manner proves or establishes the fact or the law to be that the plaintiff was not entitled to demand, sue for and recover the money from the defendant at any time, whether it was required to be paid out for the construction of a church building or not. *Non constat,* that the plaintiff would ever be able to build a new church. It might never have money enough to do so. The corporation might be dissolved by any of the methods known to the law, and thus might never build a new church. According to defendant's theory he would, then, never be required to "render unto Caesar the things that are Caesar's."

If the defendant had given the plaintiff his note for the money and had made it payable when required to be paid out for the construction of a church building, there could be no doubt that the legal effect would be to make it a contract to pay on demand, and to rob it of its character as a note. [1 Parsons on Bills and Notes, p. 39.] In case no time or an uncertain or impossible time is specified for the payment of a note, it is understood to be payable on demand. [Collins v. Trotter, 81 Mo. l. c. 278.] And when no time is specified for the performance of a contract, a reasonable time is understood. [Salisbury v. Renick, 44 Mo. 554; McNew v. Booth, 42 Mo. 189.] So, too, where money is loaned and no time is specified for its return or the time specified depends upon the happening of an uncertain event that may never occur, the loan must be regarded as a demand loan.

From these considerations it follows that the defendant has admitted that he has in his hands the fund in controversy and that he agreed to pay five per cent per annum interest for its use, but that he has failed to make good his claim that it was a trust fund in his

hands that he had a right to hold and apply only to the building of a new church, and also has failed to make good his claim that he is entitled to keep the money until it is required to be paid for the construction of a church building, but that the plaintiff was entitled to a return of its money whenever it demanded it. Kauffman is not a party to this suit, nor is this a suit upon the guaranty and, therefore, whether the plaintiff would have any claim against him on the guaranty is not material here. It is enough that in this case the plaintiff has a present cause of action against the defendant.

The judgment of the circuit court is affirmed. All concur.