[Civil No. 4206.   Filed December 16, 1940.]

[108 Pac. (2d) 380.]

## PACIFIC FINANCE CORPORATION OF CALIFORNIA, a Corporation, Appellant, v. H. E. BURKHART, Doing Business Under the Trade Name and Style of BURKHART MOTOR COMPANY, Appellee.

Mr. Allan K. Perry and Mr. William H. Westover, for Appellant.

Mr. Ray C. Bennett, for Appellee.

LOCKWOOD, J.—Pacific Finance Corporation of California, a corporation, hereinafter called plaintiff,

brought suit against H. E. Burkhart, doing business under the trade name and style of Burkhart Motor Company, hereinafter called defendant, on fifteen causes of action. Defendant demurred to the complaint and to each separate cause of action on the ground that none of them stated a cause of action against defendant, and answered and cross-complained alleging that plaintiff was indebted to him in the sum of $1,166.59. The trial court sustained the demurrer to causes of action one to thirteen, inclusive, and overruled the demurrer to the fourteenth and fifteenth causes of action, and plaintiff electing to stand upon each cause·as pleaded, the first thirteen were dismissed.

The case went on to trial on the fourteenth and fifteenth causes of action, and defendant's cross-complaint. The court found in favor of plaintiff on the fourteenth cause of action in the sum of $345.12, and in favor of defendant on his cross-complaint in the sum of $1,166.59, and that plaintiff was not entitled to attorney's fees as asked in its fifteenth cause of action, whereupon judgment was entered in favor of defendant in the sum of $1,166.59, less $345.12, being the amount established by plaintiff under its fourteenth cause of action, and plaintiff appealed from the judgment, with the exception of that portion in favor of it on its fourteenth cause of action.

There are but two assignments of error, the second of which is dependent upon whether the court was correct in its ruling sustaining the demurrers to the first thirteen causes of action, with the exception of the eighth, which plaintiff apparently admits were correctly determined. It is, therefore, necessary that we consider the allegations of the complaint.

We will summarize in a factual manner the allegations of the first cause of action only, as all of those to which demurrers were sustained are identical, with

certain exceptions which we shall point out as necessary. Plaintiff is a California corporation, while defendant was a resident of Yuma and engaged in business as a dealer in motor vehicles. On September 14, 1936, he sold to one W. L. Hubbell a Dodge automobile under a contract of conditional sale, to be paid for in installments. This conditional sale agreement was in the usual form, and we shall refer to any particular provision thereof as may be necessary without setting forth the instrument in full. On the same day defendant assigned the contract of sale and all rights thereunder to plaintiff by a written instrument which reads, so far as material to this case, as follows:

"For value received, I hereby sell, transfer and assign to Pacific Finance Corporation of California (hereinafter called the assignee) all my right, title and interest in and to the within contract, and in and to all moneys due and to become due and payable thereunder, and I do hereby sell, transfer and assign to the assignee all my right, title and interest in and to the property in said contract mentioned; and I guarantee, warrant and agree to defend the title of said property hereby conveyed against all lawful claims and demands whatsoever, except as against the rights of the purchaser in said contract; and I agree that, if the assignee shall take possession of said property for failure of the purchaser to perform any of the conditions or requirements of said contract, I will pay to the assignee the balance then unpaid under said contract within thirty (30) days after delivery of said property at my place of business, provided that such delivery be made within ninety (90) days after due date of the then unpaid installment longest overdue (the said ninety (90) days shall not include any period of time during which the assignee may be required by law to hold such property for redemption by the purchaser or for any other reason, or during which time the property may be held by any court or government agency), but no such delivery shall be required to be made to me if at the time of such taking of possession I am no longer in

the automobile business or am deemed by the assignee to be an unsafe risk, in either of which events the assignee shall have full right to make sale of said property as in said contract provided and I will upon demand pay to the assignee any and all sums provided in said contract to be paid by purchaser after sale; but if at the time the assignee makes demand on the purchaser or takes legal steps for the possession of said property, any installment then due shall be more than forty-five (45) days delinquent or if said property is alleged by the assignee to have been stolen, embezzled, confiscated, or burned and notice of loss is not filed with the insurer thereof within forty-five (45) days after the assignee is upon notice that such loss of the property is alleged to have occurred, then I shall stand relieved of all liability hereunder; . . . In the event that suit is brought by said assignee to enforce any of my obligations under this assignment, then I agree to pay to such assignee a reasonable attorney's fee in such suit. . . .

"BURKHART MOTORS
"By H. E. BURKHART, Owner."

The purchaser made several payments on his contract, but eventually defaulted thereon, and plaintiff repossessed the motor vehicle described in the conditional sales contract, and delivered it to defendant, but defendant did not pay to plaintiff the balance due from the purchaser under the conditional sales contract, nor did he repurchase said vehicle from plaintiff. He did, however, send it the following:

"6/24/37
"I hereby request Pacific Finance Corporation of California, Phoenix, Arizona, to take possession of and assist in disposing of the following cars, in either the retail or wholesale market. (Here follows list of eight cars with description)

"I understand and agree that this in no way releases me from my guarantee on these contracts covering the above listed automobiles, and agree to pay any and all deficiencies arising from the sale of these cars, as they are sold, either singly or in a group.

"(Signed) H. E. BURKHART."

In pursuance of that letter, plaintiff received the automobile from defendant and sold it at public auction to the highest bidder for cash, and applied the receipts from the sale on what was still due on the conditional contract. After such application there was a balance left of $128.85, for which plaintiff brought suit.

It will be seen that this is a case of an ordinary conditional sale by an automobile dealer and an assignment of the contract of sale to a third party by a written agreement. It is necessary that we examine the agreement to see just exactly what liability defendant assumed when he assigned the contract of sale, for it is upon this agreement and its construction that the question of whether the demurrers were properly sustained turns. The first part of the agreement is an ordinary assignment of the money due from the purchaser to the seller and of the seller's reserved title in the instrument, together with a warranty of the title against all persons except the purchaser in the contract. Then follows what the defendant agrees to do in case the purchaser does not complete the payments in accordance with the contract. This agreement may be summarized as follows: (a) If the plaintiff takes possession of the automobile for failure of the purchaser to live up to his contract and delivers it to defendant within ninety days after the due date of the unpaid installment longest due, defendant agrees to pay the balance unpaid upon the contract within thirty days after such delivery; (b) if plaintiff itself elects to take possession of and sell the property according to law under the provisions of the conditional sales act, defendant agrees to pay to plaintiff the amount which the purchaser would be compelled to pay after such sale of the property, under the contract. It is provided, however, that if any installment is delinquent for more than forty-five days before

plaintiff makes demand for repossession of the property, or takes legal steps to secure it, then defendant is relieved of any liability under his agreement. It will thus be seen that plaintiff, after the assignment, had the right to elect between two courses in case of default by the purchaser, so far as any liability of defendant was concerned. It might take possession of the property and deliver it to defendant, without making a resale thereof in the manner set forth in chapter 67, section 2889 et seq., Revised Code of 1928. In such case, the purchaser would be discharged of any obligation under his contract, and plaintiff could recover from defendant the balance of the purchase price due. Or plaintiff might, if it chose, take the property from the purchaser and sell it under the provisions of chapter 67, *supra,* in which case defendant agreed that he would make up the difference between the amount which the automobile brought at the sale and the amount the purchaser had failed to pay on his contract. The question is which of these two courses the complaint shows that plaintiff had elected to follow, and whether under the terms of the agreement, after such election it shows defendant was bound to pay anything to plaintiff.

It is the contention of plaintiff that the first election was the one which it chose to make, to wit, of taking possession of the property and delivering it to defendant, and that under the agreement defendant automatically upon such delivery became liable for the balance of the purchase price, the purchaser being released from any liability, and defendant having the possession of and title to the automobile which he could dispose of as he pleased to recoup himself so far as possible for his obligation to plaintiff. There is no contention, nor does the complaint indicate, that any effort was made to exercise the second option of repossession and sale under the statute.

The trial court apparently felt that the case of *Commercial Credit Co.* v. *Phoenix Hudson-Essex, Inc.,* 33 Ariz. 56, 262 Pac. 1, 2, was decisive on the demurrer. In that case there was a conditional sale by defendant, an assignment of the contract to the plaintiff, and, as stated in the opinion, "a written guaranty of the performance of the contract" of the purchaser by the defendant. The assignee, as in the present case, repossessed the automobile in question, but did not sell it as provided by the statute, and brought suit against the seller on its guaranty for the amount still due under the contract. We said:

"Plaintiff herein, upon the assignment of the contract of sale, became possessed of all the rights and was also under all the liabilities of the original seller, so far as the contract was concerned. It appears affirmatively from the face of the complaint that plaintiff repossessed the automobile. This, of course, it had the right to do, either with or without notice. At this time defendant had no right whatever to said automobile or under the contract of sale, it having assigned all of its rights to plaintiff. It also appears affirmatively from the face of the complaint that plaintiff, after such repossession, voluntarily delivered the car to defendant on such terms as prevented the former from holding a statutory resale. This delivery in no manner complied with the provisions regarding a resale set forth in the statute, whereby the seller or his assignee still held the buyer liable for a deficiency. Plaintiff having pleaded that it had parted with the automobile to another for a valuable consideration, under circumstances inconsistent with a statutory resale, it was in effect an allegation that it had elected to deal with the goods as its own property, and in such case, by the terms of section 23, *supra,* [Chap. 40, Sess. Laws 1919] the buyer was discharged of any obligation under the contract. Such being true, the guarantor was discharged from its original obligation to pay the debt of the buyer. The complaint therefore shows affirmatively on its face that the defendant was not liable on its original guaranty and plaintiff

did not state a cause of action in its complaint on said guaranty.''

but we also said:

'' . . . Had plaintiff pleaded a new agreement, with a proper consideration, for defendant to perform some independent act not dependent on the satisfaction of the original contract, the situation might have been different, but we must take the pleadings as we find them. . . . ''

█ █ It is the contention of plaintiff herein that the assignment in the present case is far more than a mere guaranty of the performance by the purchaser of the condition of the contract of sale, and that it is in effect ''a new agreement, with a proper consideration for defendant to perform some independent act not dependent on the satisfaction of the original contract.'' We are of the opinion that plaintiff is correct in its construction of the agreement. The defendant in the assignment in the case at bar agreed, if the property was repossessed and delivered to him, which of course under the rule of the Commercial Credit Co. case, *supra,* would discharge the purchaser from any further liability, that he himself would assume the payment of the obligations of the purchaser. This is more than a guaranty; it is an independent agreement to become the principal debtor under the circumstances set forth in the assignment. The mere fact that the assignment is denominated at the top ''Assignment with Guaranty of Payment'' or that the word ''guaranty'' is used therein does not of itself make it, as a matter of law, a simple contract of guaranty. The character of a legal instrument is determined by what is within the four corners thereof, and not by the name given to it. We are of the opinion the complaint sets up an independent agreement by the defendant to assume liability as a principal debtor, and not as a guarantor or surety, under the circum-

stances alleged therein of repossession and delivery to him, unless it appears from the face of the complaint that the matter is within the exceptions set forth in the agreement, to wit, that the delivery was not made within ninety days after the due date of the then unpaid installment longest overdue, or that the plaintiff had delayed more than forty-five days after the installment became delinquent to make demand on the purchaser or take legal steps for the repossession of the property in question. We examine the different causes of action to see whether it appears that any of them come within the exceptions above set forth.

The allegations of the second, third, fourth, fifth, sixth, eleventh, twelfth and thirteenth causes of action on this point are in the following language, differing only as to the dates set forth:

"On the fifth day of January, 1937, the purchaser was in default under said contract of conditional sale and on the thirtieth day of April, 1937, plaintiff repossessed the motor vehicle described in said contract of conditional sale, and delivered the same into the possession of the defendant."

and in each of these causes of action the dates given for default and repossession are more than forty-five days apart. We think that each of these causes of action shows upon its face that a period of time had elapsed between default and repossession by plaintiff of more than the forty-five days set forth in the agreement.

It is urged that the forty-five days does not run from the default and the repossession, but from the default and the "demand on the purchaser" or "legal steps for the possession of the said property" by the assignee, and that it may be that demand had been made or legal steps had been taken within the time, although actual repossession had not occurred.

■ A complaint is always construed most strongly against the pleader, and we think that an allegation that default occurred on one day and possession of the vehicle was taken on another is sufficient to raise the presumption that possession was delivered as soon as demand was made. If, notwithstanding this allegation, proceedings were actually started within the forty-five days, we think the complaint should have so alleged, and that the causes of action which showed on their face a period of more than forty-five days between default and repossession were subject to a general demurrer.

■ But it is also contended by plaintiff that notwithstanding the forty-five days clause was exceeded, the letter of defendant above set forth was a waiver of that clause so far as to the automobiles mentioned therein are concerned. The cars referred to are those covered by the first, fourth, fifth, sixth, seventh, ninth, tenth and eleventh causes of action. We think this letter should be construed as a waiver of the forty-five days clause on these cars.

We hold, therefore, that the complaint as to the first, fourth, fifth, sixth, seventh, ninth, tenth and eleventh causes of action did state a cause of action sufficient as against a general demurrer, but that the allegations of the remaining counts did not.

■ The question as to the fifteenth cause of action, being for attorney's fees, depends upon whether the total amount due from defendant to plaintiff exceeds the amount due from plaintiff to defendant. It appears that the total sum of the judgments demanded in the causes of action which we have said were properly stated amounts to between fourteen and fifteen hundred dollars, while the amount found due from plaintiff was between eleven and twelve hundred dollars. Whether any attorney's fees at all be due depends upon whether plaintiff is able to prove on the

new trial that it is entitled to recover more than the amount for which defendant recovered judgment against it.

The judgment of the superior court of Yuma county is affirmed as to the second, third, eighth, twelfth, thirteenth and fourteenth causes of action and defendant's cross-complaint, and reversed and remanded as to the first, fourth, fifth, sixth, seventh, ninth, tenth, eleventh and fifteenth causes of action, with instructions to overrule the demurrers thereto and to grant a new trial thereon, in accordance with the principles expressed in this opinion.

ROSS, C. J., and McALISTER, J., concur.