419 P.2d 116

Ralph KINTNER and Florence Kintner, Roy R. Brockbank and Dorothy M. Brockbank, his wife, Appellants,

v.

Paul WOLFE, Appellee.*
2 CA–CIV 252.

Court of Appeals of Arizona.
Oct. 7, 1966.

Rehearing Denied Nov. 22, 1966.
Review Granted Dec. 22, 1966.

* This appeal was filed with the Arizona Supreme Court and assigned that court's No. 8516. The matter was referred to this court pursuant to section 12–120.23, A.R.S.

Richard L. Keefe, Tucson, Robert Morrison, Phoenix, for appellants.

Evans, Kitchel & Jenckes, by Joseph S. Jenckes, Jr., Phoenix, for appellee.

MOLLOY, Judge.

This is an appeal from a judgment in the sum of $30,000 rendered in a suit for rent under a written agreement to lease a liquor license. The case was submitted to the court, without a jury, upon stipulations of fact and answers to requests for admissions under Rule 36, Rules of Civil Procedure, 16 A.R.S.

The Brockbanks, defendants in the lower court and appellants on appeal, were the owners of business property in Sierra Vista, Arizona, deemed suitable by the parties as a location for a bar or tavern. On July 9, 1957, the Brockbanks entered into a written agreement with Wolfe, the plaintiff in the lower court and appellee in this appeal, who was the owner of a Series 6 spirituous liquor license. Also joining in this agreement were the defendants Kintner.

The written agreement is divided into two portions—a "Lease Agreement" and a "Guaranty" portion. The "Lease Agreement" was between Wolfe and the Kintners and provided, in substance, that Wolfe would lease to the Kintners the liquor license for a period of five years beginning August 1, 1957, at a monthly rental of $500 per month or 5 per cent of the gross proceeds, whichever was the greater. This lease of the liquor license was contingent upon the transfer of the license from another location to the property of the Brockbanks in Sierra Vista. The Kintners were given an option to renew the lease for an additional term of five years upon the same terms and conditions.

The "Guaranty" portion of the agreement designated Wolfe as "lessor" and the Brockbanks as "guarantors." Pertinent portions of this agreement read as follows:

"In consideration of payment to LESSOR [Wolfe] of $1000.00 by GUARANTORS, [Brockbanks] as and for first and last months rent under the Lease Agreement above set forth with particularity, the execution by said LESSOR of said Lease Agreement, and the covenants and conditions hereinafter set forth and contained, LESSOR and GUARANTORS hereby and herewith agree as follows to-wit:

"1. LESSOR agrees:

"A. That he has received $1000.00 in cash from GUARANTORS, and. gives acquittance therefore and agrees that the same shall apply to first and last months rent under the above Lease Agreement.

"B. That in the event LESSEES [Kintners] default in payment of rent provided GUARANTORS may make payment of rent for and on behalf of LESSEES.

"C. *That in the event LESSEE'S right to operate under said license is terminated for any reason prior to the expiration of ten (10) years from the date of commencement of said lease term, then and in such case, LESSOR will lease said license to GUARANTORS or the person or persons designated from* [sic] *the remainder of said ten (10) year period* upon the following terms and conditions:

"(1) Any such further and additional lease shall be subject, in all cases, to the final approval of the State Department of Liquor Licenses and Control, and/or its successors in responsibility.

"(2) All fees incidental to such further transfers shall be paid by GUARANTORS.

"(3) No transfer from the above location shall be allowed without LESSOR'S consent in writing having first been obtained.

"(4) No rental shall be excused for any period or periods during which operations are not conducted by virtue of said license.

"(5) The rental and, in general, all terms and conditions in any such new lease or leases shall be exactly as provided for in the above Lease Agreement.

"2. GUARANTORS agree:

"A. *To guarantee the payment to LESSOR of rent totalling Sixty Thousand Dollars ($60,000.00) or Five Per Cent (5%) of the gross proceeds of sales, whichever is greater,* at the rate and in the manner provided for in said Lease Agreement, *over a period of ten (10) years from the date the initial term of said lease commences, without respect to future changes in conditions, obtaining now, or at any given time,* and subject further to LESSOR'S right to accelerate payments for non-compliance as in said Lease Agreement provided and for all or any portion of the full amount herewith contracted to be paid LESSOR within ten (10) years from said date of commencement.

"B. To retransfer of license to LESSOR by the State Department of Liquor Licenses and Control as provided in the Lease Agreement and in the event of GUARANTORS' failure to provide another suitable Lessee or Lessees, and Lease Agreement as in this Guaranty provided." (Emphasis added)

The lease between Wolfe and the Kintners was not renewed for the second five-year term, though Mr. Kintner continued to occupy the premises in question and used the liquor license, the subject of the foregoing agreement, until some nine months after the expiration of the first five-year term. It was stipulated that no rent was paid for the use of the liquor license during these nine months. Upon the failure to make rental payments, Wolfe gave notice of option to accelerate the rent and sued both the defendants Brockbank and the defendants Kintner for $30,000. The lower court granted judgment against one of the defendants Kintner (the husband) in the sum of $4,500, and against the defendants Brockbank in the sum of $30,000. There is no question raised on appeal as to the propriety of the Kintner judgment.

There have been nine assignments of error raised by the Brockbanks, but these assignments resolve themselves into two questions: (1) Under the terms of the written agreement, were the obligations of the appellants Brockbank limited to being a guarantor of the obligations of the Kintners under the lease agreement? (2) If the obligations of the appellants Brockbank extended beyond those of the Kintners, so as to guarantee rent for a period of ten years, then was such liability terminated effective as of December 31, 1963, by the adoption of section 4–203, A.R.S., making it illegal after such date to lease a liquor license?

As to the first question raised, it is the Brockbanks' contention that because the agreement in question was labeled a "Guaranty" and because the other provisions of the agreement are ambiguous, a fair construction of the instrument in question leads to the conclusion that the Brockbanks are not liable under this agreement beyond the initial five-year term.

It is, of course, true that the most natural meaning of the word "guaranty" is that a person is making himself secondarily liable for the primary obligations of some other person. Williston on Contracts, Vol. 2, § 465, p. 1341 (Rev.Ed.). However, all of the authorities appear to concur that the contract of guaranty is a contract separate and distinct from the contract evidencing the principal obligation. 24 Am.Jur., Guaranty, § 4, pp. 875–76; 38 C.J.S. Guaranty § 2, p. 1132. The contract of guaranty may be as broad as, or broader or narrower than, the contract between the principal debtor and his creditor. Rector, etc., of Mt. Calvary Church v. Albers, 174 Mo. 331, 73 S.W. 508, 512 (1903); 38 C.J.S. Guaranty § 2, p. 1132, § 43, p. 1192.

Moreover, though the word "guaranty" may have been used, the word itself has various meanings and, in at least one

sense, contemplates an original obligation on the part of the person executing the contract. Pacific Finance Corp. of California v. Burkhart, 56 Ariz. 383, 391, 108 P.2d 380, 383 (1940); 38 C.J.S. Guaranty § 2, p. 1131; 24 Am.Jur., Guaranty, § 5, p. 876.

■ The label that is placed on an instrument is of import only in the event that such a label might aid in the construction of ambiguities within the document. The following quotation has pertinency:

"The mere fact that the assignment is denominated at the top 'Assignment with Guaranty of Payment' or that the word 'guaranty' is used therein does not of itself make it, as a matter of law, a simple contract of guaranty. The character of a legal instrument is determined by what is within the four corners thereof, and not by the name given to it."

Pacific Finance Corp. of California v. Burkhart, 56 Ariz. at 391, 108 P.2d at 383.

■ An interpretation of an instrument which gives a reasonable and effective meaning to all portions thereof is preferred to an interpretation which leaves a part of the wording of the instrument of no effect. Tyson v. Tyson, 61 Ariz. 329, 149 P.2d 674 (1944); Employer's Liability Assurance Corp. v. Lunt, 82 Ariz. 320, 328, 313 P.2d 393, 399 (1957); Restatement, Contracts, § 236, p. 327.

■ If it had been the intent of the subject instrument merely to guarantee a performance by the Kintners of the lease agreement, such a guaranty could have been expressed in fewer words than those used in the instrument in question. It would be difficult to express an obligation on the part of the appellants for a full ten-year term in any clearer language than that used. We hold that the trial court did not err in construing the subject agreement to provide for a primary obligation on the part of the Brockbanks to guarantee to Wolfe rent for the subject liquor license for a period of ten years, regardless of whether the Kintners exercised their option to renew the lease for the second five-year term.

We pass on to the second contention of the Brockbanks. Section 4-203, A.R.S., adopted by chapter 2, Laws of 1961, First Special Session, in its pertinent portion, reads as follows:

"E. No spirituous liquor license shall be assigned, transferred or sold, except as provided for in this title. *No spirituous liquor license shall be leased or subleased, except that for the purpose of preserving rights and duties that have already matured, any licensee who has leased a spirituous liquor license under a lease in effect on the effective date of this subsection shall,* after examination of such lease by the superintendent, *be permitted to continue the lease according to its terms, and the license shall revert to the lessor upon expiration of the lease,* or upon any termination of the lease, *or by December 31, 1963, whichever is sooner."* (Emphasis added)

The Brockbanks contend that the subject statute rendered illegal the performance of the subject contract from and after December 31, 1963, and that they are not liable for rent beyond such date because of failure of consideration. With this contention we are in agreement.

We believe the following to be a fair statement of applicable law:

"A contractual duty or a duty to make compensation is discharged, in the absence of circumstances showing either a contrary intention or contributing fault on the part of the person subject to the duty, where performance is subsequently prevented or prohibited.

"(a) by the Constitution or a statute of the United States, or of any one of the United States whose law determines the validity and effect of the contract, or by a municipal regulation enacted with constitutional or statutory authority of such a State, or"

\* \* \* \* \* \*

Restatement, Contracts, § 458, p. 852.

██ It is Wolfe's contention that inasmuch as the subject agreement provided *that the Brockbanks guaranteed the rent for ten years* " * * * without respect to future changes in conditions obtaining now or any given time * * *," the risk that the renting of liquor licenses might become illegal was assumed by the Brockbanks. We do not believe that these words go so far. We note that in this very same agreement Wolfe agreed, without any qualification whatsoever, to " * * * lease said license to GUARANTORS or the person or persons designated from [sic] the remainder of said ten (10) year period * * *." Assuming, without deciding, that parties may cast the risk of the passage of such a statute as this upon a lessee, so that the lessee would have to pay rent even though the rental agreement is illegal, we do not construe the subject language as intending to cast this risk upon the Brockbanks. If the intent were as contended by Wolfe, we believe that some qualification would be placed in the instrument limiting Wolfe's obligations to lease and demise the subject license. As we construe the words "future changes in conditions," they are intended to cover changes in business and economic conditions which might frustrate the use of the license in question by the lessee, such as an abandonment of the nearby Fort Huachuca as a military installation or other occurrences of like kind, but they do not include· the enactment of legislation making illegal the performance of the contract in question.

██ In defense of the judgment rendered below, it is argued that because Wolfe exercised an option to accelerate future rents before the time that the leasing of the liquor license became illegal, a judgment for rent for the entire last five years of the guaranty period is proper. No authority is cited in support of such proposition. We do not believe that the exercise of the acceleration clause as to future rents places the lessor in any better position than if the lease agreement had originally called for prepaid rent. If the rent had been prepaid, when the performance of the agreed exchange became partially impossible, as here, a pro rata recovery of such prepaid rent would be appropriate:

"(2) Except where a contract clearly provides otherwise, a party thereto who has rendered performance for which the other party is excused by impossibility from rendering the agreed exchange, can get judgment for the value of what he has rendered, less the value of what he has received, unless what he has rendered can be and is returned to him in specie within a reasonable time." Restatement, Contracts, § 468, p. 884.

See also Williston on Contracts, Vol. VI, § 1974, p. 5544 (Rev.Ed.).

The judgment of the lower court is reduced from the sum of $30,000 to the sum of $8,500, such judgment to bear interest from the date specified in the judgment in the lower court, and, as thus modified, the judgment of the lower court is affirmed.

KRUCKER, C. J., and HATHAWAY, J., concur.