[L. A. No. 1148.   In Bank.—May 12, 1904.]

PROVIDENT MUTUAL BUILDING–LOAN ASSOCIATION, Respondent, v. JOHN W. DAVIS et al., Defendants; HERBERT C. BROWN, Appellant.

FORECLOSURE OF MORTGAGE—COUNTERCLAIM—INSUFFICIENT PLEADING—INDEBTEDNESS—FACTS NOT STATED.—A counterclaim in an action to foreclose a mortgage must be shown to have existed as a counterclaim at the time of the commencement of the action; and a pleading which merely alleges an indebtedness of plaintiff to defendant's assignors, existing before the commencement of the action, and that the same has not been paid, and is now due and payable, without the statement of any facts showing that such indebtedness was mature when the action was commenced, is not sufficient, and a demurrer thereto was properly sustained.

ID.—MORTGAGE TO BUILDING AND LOAN ASSOCIATION—BY-LAWS—WITHDRAWAL VALUE OF STOCK—DEDUCTION IN EXPENSE ACCOUNT.—The rights of the mortgagor under a mortgage to a building and loan association as to the withdrawal value of the stock, and deductions from installments paid in on the stock for a share of expense account, must be measured by the terms of his contract, under the valid by-laws of the association, in case of his withdrawal therefrom, and he cannot claim in such case contrary to such by-laws that the expenses of the association must be paid out of its earnings, and not by deduction from installments paid in on stock.

ID.—INVALID LAW AGAINST DEDUCTION—TITLE OF STATUTE CREATING COMMISSIONERS.—Section 19 of the act of March 23, 1893, "creating a board of commissioners of the building and loan associations, and prescribing their duties and powers" (Stats. 1893, p. 229), providing that the withdrawal value of shares is the full amount paid in, with no deduction for expenses, is invalid under section 24 of article IV of the constitution, as not being embraced within the title of the act.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. N. P. Conrey, Judge.

The facts are stated in the opinion of the court.

Frank G. Bryant, and Herbert Cutler Brown, for Appellant.

O. B. Carter, for Respondent.

LORIGAN, J.—The plaintiff, a building and loan association, brought this action to foreclose a mortgage given by defendants John W. Davis and his wife, Virginia, to secure payment of a note executed by John W. Davis in favor of plaintiff, making H. C. Brown, who had subsequently become the owner of the property, a party defendant.

Brown filed an answer and counterclaim; the Davises made default. Plaintiff demurred to the counterclaim on the ground that it did not state facts sufficient to constitute a counterclaim, and the demurrer was sustained. Upon the remaining issues the court found for plaintiff, directing the usual decree of foreclosure and sale of the mortgaged premises, and the entry of a deficiency judgment, if any, against John W. Davis.

From an order denying his motion for a new trial and from the judgment Brown appeals.

The counterclaim sought to be interposed was as follows: "And as and for a separate and special defense to the said action, defendant Brown, by way of counterclaim, alleges that he has acquired all the right, title, and interest of defendant John W. Davis and Virginia Davis, his wife, in and to the said mortgaged premises, and is now the owner thereof; that the said plaintiff was on the first day of June, 1900, indebted to Messrs. Miller and Brown for the sum of $350, upon a contract for the express payment of money; that thereafter, and prior to the commencement of this action, Messrs. Miller and Brown duly assigned said claim to the defendant Brown herein, and that said defendant is now the owner and holder thereof, and that the same has not been paid, nor any part thereof, and that the same is now due and payable."

1. The appellant insists, as ground for a reversal of the judgment, that the court erred in sustaining the demurrer to his counterclaim.   Before proceeding to a consideration of this point it is necessary to mention that the complaint in the action was filed June 5, 1900, and the answer in which the counterclaim is set up on August 3, 1900.

It is provided by section 438 of the Code of Civil Procedure authorizing the interposition of counterclaims that the counterclaim must be one "existing at the time of the commencement of the action."

It is insisted by the plaintiff that it does not appear from the counterclaim as pleaded that it existed at the time the action was commenced, and in this we think it is correct, and that the demurrer was properly sustained.

All that defendant sets up in his counterclaim, aside from the assignment of the claim by Messrs. Miller and Brown to himself, is that "plaintiff was on the first day of June, 1900, indebted to Messrs. Miller and Brown in the sum of $350 upon a contract for the express payment of money, . . . that the same had not been paid, nor any part thereof, and that the same is now due and payable."

These allegations do not show the existence of any counterclaim in favor of defendant at the time of the commencement of the action.

To state that plaintiff was on June 1, 1900, "indebted . . . in the sum of $350 upon a contract for the express payment of money" is not an allegation from which it appears that such amount was due at that date, nor is such an allegation the equivalent of a statement of facts from which it would appear that a right of action then existed to recover it.

The term "indebted" means that a complete and absolute liability exists; complete and absolute to the extent that ultimate payment must be made, but it does not necessarily mean that such liability has matured or that an indebtedness is immediately payable.

Indebtedness includes as well obligations which are yet to become due as those which are already matured.   So to allege merely that one is "indebted" without any statement of facts showing a present right to enforce payment does not disclose any legal liability, because there may be an existing indebtedness without any liability for present payment.

The only authority cited by appellant to sustain his pleading is the case of *Pleasant* v. *Samuels,* 114 Cal. 34. In that case, however, the pleading was on common counts, in one of which it was alleged that "defendant is indebted to plaintiff in the sum of $32,364.06 on account of money heretofore at the special instance and request of defendant paid out, expended, loaned, and advanced . . . to defendant by plaintiff." This allegation followed the language employed in charging on the common count in debt at common law, which count may still be used to state a cause of action under our practice. And from the allegation in such count that moneys were paid out and expended at the special instance and request of defendant, the rule of law has always been that these facts raise an implied promise on the part of the defendant, and a legal liability to pay immediately on demand. No such immediate liability is implied, however, where the allegation is of an express contract for the payment of money, and neither under the common count nor under the general practice is a present liability presumed from a mere use of the term "indebted."

Nor is the defendant's pleading aided by his closing allegation "that the same is now due and payable." This is only a conclusion of law, yet, treated as a statement of fact, it amounts only to a declaration that, at the time of the filing of the answer, the amount was due and payable. As the code, however, requires the cause of action on the counterclaim to be one existing at the time the suit in which it is interposed is commenced, it can avail defendant nothing to charge plaintiff's liability as of a period two months after the complaint was filed. He should have stated facts showing that the claim was due and payable when suit was commenced, not months afterwards.

We think the demurrer was properly sustained.

2. It is next insisted by appellant that the withdrawal value of the stock held by Davis, and applied in part payment of the mortgage, was not correctly found by the court. This involves the amount of $30.31, which was deducted by the association from the installments paid on the stock and credited to an expense fund, pursuant to the by-laws of the association.

Appellant does not claim that the withdrawal value, after

making these deductions, is not correctly calculated according to the by-laws, but attacks the validity of that portion of such by-laws which provides for an expense fund, contending that the expenses of the association must be paid out of the profits earned, and not by deductions made from installments paid in on the stock.

As to the creation of this expense fund, the by-laws provide for a maturity reserve fund, which shall consist of an amount equal to two per cent of the matured value of all installment shares, and is taken from the first payment. The by-laws provide further that the expense fund shall consist of this maturity reserve fund, and twenty cents per share per quarter, though the shares were, in fact, only charged ten per cent from the monthly payments, which amounts to less than twenty cents quarterly. The $30.31 is claimed to have been erroneously charged against Davis by reason of the credits to said two funds, reducing to that extent the withdrawal value.

When we consider Davis's relation to the plaintiff association and its by-laws, we cannot perceive that he has any reason to complain of these charges, unless by some provision of law they were illegally made.

It is elementary law that corporations have power to enact by-laws for their internal government, determining the rights and regulating the duties of stockholders or members, and providing for the unforeseen details which may arise in the transaction of their business.

These by-laws, when properly passed, and not inconsistent with the charter under which the corporation is organized, or with the constitution of either the United States or of the state or its laws, are valid and binding upon the corporation and each of its members.

When the shares of plaintiff's stock were issued to Davis he became a member of the association and subject to its by-laws. When he obtained the loan from plaintiff and executed the contract of mortgage, he agreed with both the association and his fellow-members that in case of withdrawal he would be entitled only to the surrender value of his stock as fixed by the rules and by-laws of the association. It is the policy of the law to hold parties to their contracts. When a person desires to borrow money from a building and

loan association, and for that purpose becomes a member, his rights must be measured by the terms of his contract, and if he agrees to by-laws which fix the withdrawal value of his stock, in case he ceases to be a member, he does so of his own free will, and must abide by his contract in case he withdraws from the association. Any other rule would lead to endless confusion and litigation.

As, then, the surrender value of this stock was correctly calculated under the by-laws of the association in which he was a member, he must abide by such result, unless, as we have said, there is some provision of law invalidating the by-laws under which the calculations were made.

Defendant Davis held five shares of the stock, of the matured value of five hundred dollars, and the deduction made from the first payment for the maturity reserve fund, as provided for in the by-laws, was two per cent of the matured value, or ten dollars. It is contended by appellant that this charge was in fact an initiation fee, and thus violative of section 634 of the Civil Code, which provides that a building and loan association shall be permitted to charge an entrance fee not exceeding ten cents on each share. But it does not appear that any entrance fee was charged. The amount was in fact charged on the shares as the first payment for the maturity reserve fund. It was a payment on the shares, and the by-laws provided for and directed its application. The application was agreed to by Davis, and the money paid in to be so applied.

Appellant contends that under section 19 of an act entitled, "An act creating a board of commissioners of the building and loan associations, and prescribing their duties and powers," approved March 23, 1893, (Stats. 1893, p. 229,) the withdrawal value of the shares was the full amount paid in, with no deductions for expenses. The section provides, among other things, that a stockholder withdrawing "shall be entitled to receive the full amount paid in by him or her, together with such proportion of the earnings thereon as the by-laws may provide, or as may have been fixed by the board of directors." It is contended that the above section is in violation of section 24 of article IV of the constitution, which provides that "every act shall embrace but one subject, which subject shall be expressed in its title." We

think that section 19 is clearly unconstitutional. It deals with the rights of stockholders in transactions with the corporation, and fixes certain rules in case a stockholder withdraws. It has nothing to do with the duties or powers of the board of commissioners, and is entirely foreign to the title of the act. The title of the act in no way indicates that anything is contained therein as to the rights of stockholders, nor to their ceasing to be members.

The judgment and order are affirmed.

Shaw, J., Van Dyke, J., Henshaw, J., Angellotti, J., and McFarland, J., concurred.