[Civil No. 3292.   Filed August 5, 1933.]

[24 Pac. (2d) 375.]

INTERNATIONAL HARVESTER COMPANY OF AMERICA, a Corporation, Appellant, v. NICK DAVOTVICH, Appellee.

Mr. M. L. Ollerton, for Appellant.

Messrs. McFarland & Fulbright, for Appellee.

McALISTER, J.—This is an action in replevin instituted by the International Harvester Company, a corporation, against Peter Dimich and Nick Davotvich to gain possession of the following farm machinery sold the latter by the O. S. Stapley Company under an agreement by which the seller, or its assigns, retained title until the full amount of the purchase price was paid, namely: One Farmall tractor, No. QC40617, one No. 1 Farmall middle buster, one two-row Farmall cultivator, and one Farmall tractor, No. QC55185.

At the time of the sale of the first three implements, viz., January 15, 1929, the defendants, who were partners in farming operations, executed four promissory notes in favor of the O. S. Stapley Company bearing eight per cent. interest until maturity and ten per cent. thereafter. Two of these notes were in the sum of $345 each, were given for balance due on the Farmall No. QC40617 and matured on June 15th and October 1st, 1929, respectively. The other two were in the sum of $85.50 each, bore the same interest as the first two and were given for a No. 1 Farmall middle buster and a two-row Farmall cultivator. They likewise matured, one on June 15th and the other on October 1st, 1929. Each of these notes provided that until they were paid title to the implements for which they were given should remain in the payee, owner or holder, and should default be made in the payment thereof, the owner or holder of the notes could take possession of the implements and retain them.

About fourteen months following this transaction, to wit, on February 27, 1930, the defendants executed a note for $560, payable to the O. S. Stapley Company October 1, 1930, to cover the deferred payment on a second Farmall tractor, No. QC55185, the same provisions as to interest, title and default that were contained in the other four notes being placed therein.

Immediately after the execution and delivery of these notes they were indorsed, sold, assigned and delivered to the plaintiff, the International Harvester Company of America, who then became and has since remained the owner and holder of them and of the legal title to the implements for which they were given. They bore also an indorsement by the O. S. Stapley Company guaranteeing their payment.

When the complaint was filed in January, 1932, payments amounting to $650 of the $861 principal which the four notes dated January 15, 1929, totaled, had been indorsed on them, and a payment of $100 on the principal of the note for $560 dated February 27, 1930, was also indorsed on it. According to the indorsements these notes bore, none of them had then been fully satisfied, so the complaint alleged that a portion of the purchase price for each of the implements was due and unpaid and that under the terms of the notes the plaintiff was entitled to the possession thereof, but that the defendants had wrongfully withheld this and still refused to surrender it, notwithstanding the plaintiff had made demand therefor upon them.

To this complaint the defendant, Nick Davotvich, who prior to the institution of the action had acquired the interest of his partner, Dimich, demurred generally, and answered further admitting the purchase of the implements and the execution and delivery of the notes, but alleged that he had paid those dated January 15, 1929, in full, the final payment thereon having been made on February 12, 1931; that following this the plaintiff caused a writ of replevin to issue to the sheriff, commanding him to seize the implements, and this was done; that since then the plaintiff has wrongfully withheld and detained the same; that the reasonable value of the property wrongfully and maliciously taken and detained was $800; that the damage caused the defendant by reason of such

wrongful taking and detention was $1,200. The substance of the answer was set up also by way of a cross-complaint.

The jury by its verdict found that the plaintiff was entitled to the second Farmall tractor, No. QC55185; that the defendant was the owner of and entitled to the possession of the first Farmall tractor, No. QC40617, the Farmall middle buster and the Farmall two-row cultivator; that the value of the three last-named implements was $500; and that the defendant was damaged by the plaintiff in the sum of $350 as a result of its detention of his property.

Following the rendition of the verdict the defendant elected to accept, in lieu of the three implements the jury found to be his, the $500 fixed by it as their value. Thereupon, the court rendered judgment in favor of the defendant in the sum of $850 and costs, and this is the judgment the plaintiff has brought here for review.

The several assignments are discussed under two propositions, the first of which is that the defendant did not produce evidence sufficiently substantial to justify the verdict that he had paid the title-retaining notes covering the implements involved, and the other, that the admission of certain evidence over appellant's objections was prejudicial error. In urging the first proposition appellant, after calling attention to the rule so often announced by this court, that it will not pass on the weight of the testimony or disturb the verdict or findings of the trial court when the evidence is in conflict and that in support of the judgment or the findings is of a substantial nature (*First Baptist Church* v. *Connor*, 30 Ariz. 234, 245 Pac. 932; *Young Mines Co., Ltd.,* v. *Citizens' State Bank,* 37 Ariz. 521, 296 Pac. 247; *Hagan et al.* v. *Cosper,* 37 Ariz. 209, 292 Pac. 1020), contends that the record discloses a lack of any substantial or reasonable evidence upholding the jury's conclusion that

appellee had paid the notes in full. The defendant having offered what he claims to be substantial evidence in support of his allegation of payment, a brief statement of the testimony on that point becomes necessary.

The notes, as we have seen, were assigned to the appellant immediately after the sale, but appellee, notwithstanding, made all his payments, except one for $100, to the payee in the notes from whom he had purchased the implements, and that company forwarded the money to the appellant at its Los Angeles office. Upon receiving it there the International Harvester Company entered it on a ledger and later indorsed it on one of the notes, which show payments totaling the following amounts: $345, on the note for that sum, due June 15, 1929; $255, on the second one for that sum, due October 1, 1929; $50, on the one for $85.50, due June 15, 1929; nothing, on the other one for $85.50, due October 1, 1929; $100, on the one for $560, due October 1, 1930. This left unpaid on the four notes dated January 15, 1929, $211 principal and $118.11 interest, and on the one dated February 27, 1929, $460 principal and $109.15 interest, and the testimony in behalf of appellant was that nothing had been paid on the notes other than that shown by the indorsements. It introduced eight credit memorandums which compared with these in amounts, though the dates differed somewhat, but this was accounted for by one of appellant's witnesses who stated that it took several days for the memorandums to reach Los Angeles, where they were entered in the ledger and later indorsed on the notes as of that date.

Appellee testified, however, that he paid the four notes dated January 15, 1929, in full and that he made all the payments to the payee, the O. S. Stapley Company, at its Chandler store, except the last one, $250.05, which he paid at its Phoenix store. In

substantiation of this statement he produced six receipts from that company showing payments by him and Dimich totaling $550 and one signed by G. R. Armstrong, manager of the Grasty Implement Company at Coolidge, stating "On I. H. C. note," $100, and then testified that he was not given receipts for every payment and that his partner, Dimich, had one or two. He called attention also to the fact that there is a difference in the wording and the dates of some of the memorandum receipts introduced by appellant and those given appellee to cover the same payments, showing that the latter are not carbon copies. This discrepancy, however, was explained by the manager of the Chandler store of that company, who sold the implements and received the payments, by stating that receipts given the purchaser were ordinarily carbon copies though they were not so in every instance due to the fact that a carbon in the receipt book or pad was not always at hand.

Appellee places particular stress on the payment of $250.05 on February 12, 1931, which, he said, satisfied the indebtedness in full. He testified:

"The last payment I went into Chandler and I asked them how much I owed on the Farmall and the cultivator and the middlebuster, and they told me $225 and the interest, $25.05, making a total of $250.05 and I told them I always paid my payments here and I said I had to go to Phoenix and get some money and I asked if it is all right I pay in the Phoenix office, or come back here and pay, and they said to pay it in Phoenix, and I asked the bookkeeper there in Phoenix how much I owed on the Farmall and cultivator and middlebuster and they told me $225.00 and interest and I told them that the fellow at Chandler figured the interest $25.05 and he figured it himself and he made it $250.05 and I just handed over a Coolidge Bank check and I said to go ahead and make it for what I owe you and he made the check $250.05 and he put full paid on the back of the

check and the number of the tractor and the Farmall.''

''I told the bookkeeper there, that check is all right and it is full paid and I asked for a bill of sale. The bookkeeper 'phoned to Chandler and he said Nick Davotvich is here and wants to pay off the notes on the Farmall and the cultivator and the middlebuster and he wants a bill of sale. He 'phoned to Mesa.

''He wants to know if he had any more notes and he closed the 'phone and called the International Harvester Company and he said Nick Davotvich is here and he wants to pay the notes on the Farmall and the middlebuster and the cultivator and he wants a bill of sale and he said, 'Is it all right to give it or not,' and he sat down and made the bill of sale.''

It appears that on February 27, 1930, when appellee and Dimich purchased the second Farmall tractor, No. QC55185, and gave their note for $560 for the deferred payment, they also, in order to take care of the *down* payment of $500, paid $100 in cash, delivered their promissory notes totaling $400, two for $100 each and one for $200, payable one, two and four months after date, and secured their payment by giving a chattel mortgage dated March 12, 1930, on one Farmall tractor, No. QC40617, one Farmall middle buster and one two-row cultivator upon which, according to the indorsements on the notes dated January 15, 1929, there was then still due $311. It was this mortgage the credit manager of the O. S. Stapley Company, J. A. Dewar, testified he understood appellee referred to when he came to the office of the witness and said he wanted to pay off the mortgage on some equipment, for the testimony of the witness was that appellee told him it was a first mortgage and that there was nothing else owing on the machinery. Thinking this to be the situation he gave the bill of sale not knowing of any balance, if there was one, owing the International Harvester Company, though before giving it he called by tele-

phone the office of that company and, according to appellee, also the O. S. Stapley Company at Chandler, to ascertain the facts relative thereto, but, he stated, the person at the International Harvester Company's office who could have given him this information was out. He further testified that he made a record of the payment in the form of two credit memorandums, both of which were introduced in evidence, one of them showing a payment of $200 principal and $23 interest on note, No. 2847, and the other a payment of $25 principal and $2.07 interest on note, No. 2845. Appellee stated that he took no receipt for this payment but only the check and the bill of sale and in reply to the question whether he had receipts for any other payments on the $400 said: ''No, since I got the bill of sale I never kept it. I never expected to get in trouble.''

Appellee admitted that he had paid only $100 on the deferred payment of $560 on the second Farmall tractor, hence he did not contest the replevin action in so far as it applied to that implement, though he testified that he made all of the down payment of $500. Appellant's position seems to have been, upon the other hand, that of the $400 of this down payment secured by the mortgage he still owed $300 on February 12, 1931, and to support this view it introduced in evidence a memorandum receipt made by the O. S. Stapley Company showing the payment by him under date of May 26, 1930, of $100 principal and $2.50 interest and the credit of the same on note, No. 2849, which must have been one of the three notes totaling the $400. The check for $225 principal and $25.05 interest, however, did not satisfy this balance of $300 and appellant does not account for the difference, though its counsel asked appellee on cross-examination if he did not on June 9, 1930, make a payment of $75 on the $400, to which he replied: ''I can't remember the $75. . . . I paid mostly $100, and $105

and $102.50, mostly paying one hundred dollars.'' Appellant did not press the question nor offer a credit memorandum or any other affirmative evidence of its payment. Testifying further regarding the down payment appellee stated that he paid $100 when he bought the second tractor and in reply to the question whether he had not also given three notes, one for $200 and two for $100 each, said: ''The down payment was $300 cash,'' and when pressed further with the query, ''Have you got any receipts for that $300 cash?'' answered: ''The fellow that was with me, I gave him one hundred dollars cash in Coolidge on the deal and I went into Casa Grande and gave them $200 and that was three hundred dollars.''

. The evidence discloses that across the face of each of the two notes for $345 was stamped the following: ''Paid, by International Harvester Company,'' and appellee points to this as additional proof of payment. This was explained, however, by an employee of the International Harvester Company, W. H. Wyman, Jr., who testified that appellee had not paid the notes but that the guarantor, the O. S. Stapley Company, had done so on September 21, 1931, after appellant had failed to collect them from appellee, but that the money was returned to the Stapley Company when this action was instituted.

In further corroboration of his statement that he had paid the amount in full appellee cites the testimony of B. H. Corley, who testified that he went to the Chandler store of the O. S. Stapley Company in the early part of 1931 to see about buying the tractor, or taking up the contract of Davotvich, and that while there he had the following conversation with the manager:

''I just went over to take up this man's payments provided he couldn't raise the money and I went in and asked him how much is against this Farmall tractor of Mr. Davotvich's and he says there is $250.05

and, well, I says, he sent me over here and told me he had the tractor and cultivator and middlebuster and if he couldn't raise the money, if I wanted to pay it off, I could have it, so I went in and talked with them about it and that was what he said, that there was $250.05 against it, so he said I am going to give him four or five days to raise this. I went back in about four or five days to see if he had raised it and paid it off and asked him if he had paid the payment and he said he has and he gave a receipt and bill of sale, and that is as far as the conversation went. I knew that I wasn't going to get the tractor and it was a bargain, and I just turned around and walked out.''

The manager of the Chandler store admitted that the witness, Corley, spoke to him about paying off the balance on the machinery but said he gave him the approximate amount of the indebtedness, not the exact sum because he did not know this.

Whether, therefore, the payment of $250.05 on February 12, 1931, was, as appellant contends, in settlement only of the balance due on the three notes totaling $400, or was, as appellee argues, in satisfaction of all sums he may have owed appellant, either on the three notes of February 27, 1930, or on the four of January 15, 1929, or on both, was purely a question of fact for the jury. The $225 of this payment designated as principal failed by $75 to satisfy the $300 appellant's testimony disclosed to be then due in principal on the three notes secured by the mortgage and it overpaid by $14 the $211 it claimed to be due on the four notes dated January 15, 1929. Appellee's testimony, upon the other hand, that this check for $250.05 paid all he owed on both sets of notes, when considered in connection with that offered in corroboration of it, was sufficient to take the issue of payment to the jury. The mere fact that appellee did not have receipts for each of the payments he testified he made did not, in the light of all the evidence,

constitute a failure to show substantial proof of payment. "In accordance with the general rules relating to the respective provinces of court and jury in the trial of civil actions," to use the language of 48 C. J. 729, "the question of payment is ordinarily one of fact, and therefore is for the jury." In *Albert Steinfeld & Co.* v. *Wing Wong,* 14 Ariz. 336, 128 Pac. 354, this court said:

"The issue, as before stated, was as to whether the Wing Wong account had been paid or not, and there was proper and legal evidence tending to sustain the negative as well as the affirmative of that proposition. It was for the jury to say which side of the contention was right."

The second proposition urged is that the court erred in admitting certain evidence over the objection of appellant, evidence of such a nature that the jury would not have found for appellee had it not been admitted. It appears that both of the two notes for $345 had been paid by the guarantor and stamped with these words: "Paid, by International Harvester Company," and the witness, W. H. Wyman, Jr., for several years manager of appellant's business in Arizona, testified on direct examination that it was paid through error and for this reason the money was returned to the Stapley Company when this action was started. Pursuing this subject on cross-examination appellee's counsel asked the witness: "Now, Mr. Wyman, as a matter of fact, the reason that this money was refunded to The O. S. Stapley Company, and you brought this action on this tractor was because The O. S. Stapley Company had given a bill of sale, a clear bill of sale to this property, wasn't it?" Appellant objected upon the ground that the question called for a conclusion and was immaterial, but the court overruled the objection, and it occurs to us properly so. It may, perhaps, as appellant contends, have been the purpose of this

question to convey the impression that it refunded the money and instituted the action, not because the guarantor, the O. S. Stapley Company, erred in paying the money, but because it desired to protect the latter from the consequences of its act in giving a bill of sale covering the property and perhaps thereby placing itself where it could not withstand as successfully as appellant the plea of payment. But even if this were true and appellee was wholly mistaken in his implication he was still within his rights in attempting to show the money was returned for a different reason than that testified to by the witness, and the fact that payment of these two notes by the guarantor did not relieve appellee from liability for any balance he may have owed thereon did not deprive him of the right to cross-examine the witness in the light of his contention that he had paid them in full through the guarantor.

The introduction of the bill of sale was also objected to upon the ground that the O. S. Stapley Company, having theretofore assigned the title-retaining notes covering the deferred payments, had no interest in the property to convey. It is true that the assignment carried with it title to the implements and that the O. S. Stapley Company no longer had any interest in them, except that of a guarantor who might be called upon to make good his guarantee, in which event title would reinvest in it. *Van Marel* v. *Watson*, 28 Ariz. 32, 235 Pac. 144. However, appellee bought the implements from the Stapley Company, executed the notes for the deferred payments in its favor, made all payments to it at its Chandler store as the notes themselves provided and accepted receipts therefor signed by it, and, in fact, dealt only with it both in purchasing and paying for the implements. And payments were forwarded by it to appellant, there being no demand that appellee make them in any other way. Under these circumstances it is

clear that the Stapley Company was the agent of appellant in making the collections, and the testimony in its behalf was that it gave the bill of sale thinking that nothing more was due on the notes and that appellee was entitled to it. Hence, whether it conveyed title or not, it was admissible to show payment of $250.05 on the indebtedness, for it was at least a receipt for that amount. While the testimony in behalf of appellant was that the Stapley Company, notwithstanding it had endeavored to ascertain the fact before giving the bill of sale, made a mistake in deciding that nothing more was due, this statement, as well as the bill of sale itself, including the circumstances under which it was given, was among the matters the jury had a right to consider in determining whether anything more was due or whether the $250.05 satisfied appellee's indebtedness in full.

The correctness of the judgment depends wholly upon the facts and these are such that the court would not be justified in holding that the jury's conclusion finds no support in the record. It is peculiarly a case in which the jury's judgment of the matter should control.

The judgment is affirmed.

ROSS, C. J., and HOWARD C. SPEAKMAN, Superior Judge, concur.

NOTE.—Because of the illness of Judge ALFRED C. LOCKWOOD, the Honorable HOWARD C. SPEAKMAN, Judge of the Superior Court of Maricopa County, was called to sit in his stead.