452 P.2d 526

**Laura J. SLEIZER, a single woman, and Harriet M. Long, a widow, Appellants,**

**v.**

**ARIZONA TITLE INSURANCE AND TRUST COMPANY, formerly Arizona Title Guarantee & Trust Company, an Arizona corporation, and Max A. Kent and Martha Kent, husband and wife, Appellees.**

**No. 1 CA–CIV 725.**

Court of Appeals of Arizona.

March 27, 1969.

Douglas O. Peterson, Phoenix, for appellants.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, by Wilbert G. Anderson, Phoenix, for appellee Arizona Title Ins. and Trust Co.

Gerst, Campo & Schaeffer, by Morris L. Gerst, Phoenix, for appellees Kent.

KRUCKER, Judge.

The appellants, Laura J. Sleizer and Harriet M. Long, shall be referred to as plaintiffs and the appellees, Max A. Kent and Martha Kent,[1] shall be referred to as defendants in this opinion.[2] Plaintiffs sued

---

1. The Kents released their interest under the contract to Apollo Land Company, which actually made the release in question.

2. The Arizona Title Insurance and Trust Company was also joined as defendant in this action for releasing title to the property with knowledge of the claimed discrepancy in price.

defendants Kent for breach of contract for the sale of realty. Plaintiffs claim an additional $12,000 is owed under the contract release clause. Motions were filed for summary judgment and denied. A jury trial was held and a verdict was returned for the defendants. Plaintiffs moved for a new trial. The trial court denied this motion. Plaintiffs appeal.

Plaintiffs owned 160 acres of land in Pinal County, Arizona. The defendant Max Kent was interested in purchasing this land after talking with a Mr. Utter, the real estate broker who had originally sold the land to plaintiffs. Mr. Utter suggested that Mr. Kent make a written offer for the property. In the meantime, Mr. Utter called the plaintiffs in Minnesota and indicated a buyer was available for the property. The plaintiffs testified that on the phone Mr. Utter indicated that the Kent offer was for $750 an acre. The plaintiffs accepted this offer by telegram. Thereafter, the written offer arrived offering only $700 per acre. A second phone call was made to Mr. Utter. He explained that they had been mistaken about the price, but that in any event, their contract should include a release clause which would provide for forty-acre parcel releases at $1,000 per acre. The plaintiffs contend that Mr. Utter gave them to understand that if such a release clause were exercised they would receive $1,000 per acre as the sales price of any such land so released, rather than the $700 specified in the contract.

Plaintiffs and defendant Kent entered into a purchase contract and receipt agreement dated November 10, 1958, calling for a total purchase price of $112,000. On the back of this contract there was typed the following:

"The Seller agrees to release said property in Forty (40) acre parcels only at $1,000.00 per acre. However, the Buyer must pay the $40,000.00 release price at the time of the release and in addition to the annual installments until such time the entire principal balance has been reduced to less than $40,000.00. *The monies received shall apply toward the prin-*

*cipal due on the balance of this contract."* (Emphasis added.)

On November 19, Mr. Utter wrote the plaintiffs stating the amount of the contract was $112,000 and explaining that they would get $40,000 cash for the release of each 40-acre parcel so that they would get all of their money out in two years or less. A regular sales agreement was forwarded to the plaintiffs, signed by all the parties, and dated December 4, 1958, which recited the total purchase price of $112,000 and in this executed agreement there was the method of payment and the following clause:

"[Payable] as follows: $8,200.00 or more on or before January 15, 1960 and $8,200.-00 or more on or before January 15 of each and every year thereafter until the balance in full of principal is paid, with interest * * * at the rate of 6% per annum * * * payable annually and IN ADDITION to the annual payments on principal.

Seller agrees to release said property in forty (40) acre parcels only at $1,000.-00 per acre; however, the Buyer must pay $40,000.00 cash at the time of the release and in addition to the annual installments."

There was one 40-acre release made for which $40,000 was paid plaintiffs through the escrow agent.

Escrow instructions dated December 4, 1958, showing a balance on the contract of $82,000, and executed by all the parties, contain the following clause:

\* \* \* \* \* \*

"Seller agrees to release said property in forty acre parcels only at $1,000.00 per acre; however, the Buyer must pay $40,-000.00 cash at the time of the release and in addition to the annual installments."

On November 28, 1959, Mr. Utter wrote the plaintiffs again, sending them a Subdivision Plat for their signature. In this letter, which is Plaintiffs' Exhibit #9 in evidence, Mr. Utter again stated as follows:

" * * * This is just approving the Plat and has no bearing on the *release price,* that *they* have to pay you on *release of*

*property in 40 ac. parcels."* (Emphasis in original.)

Mr. Utter also testified that in telephone conversations prior to the execution of any papers, he had explained to the plaintiffs that the $40,000 release clause per 40 acres would mainly accelerate the payment of the total purchase price because it was in addition to the regular contract payments provided for. The testimony reveals:

"Q. Will you state what the substance of that conversation was between you and Mrs. Long?

A. The general conversation was that I explained to her the price that he was willing to pay, the offer he was going to submit, and that the release price of a thousand dollars an acre, in the event it sold off, would pay her off sooner, and she wouldn't have to wait for the full 10 years to get the balance, because I knew Mr. Kent would sell the land to somebody else or develop it, and the 40-acre release clause price of a thousand an acre would give them her money in two or three years instead of having to wait the full 10-year period."

Plaintiffs contend that the release clause of $1,000 per acre for 40 acres increased the purchase price of the land by $12,000 while defendants contend that this was merely a payment for release and that the total contract price of the land was as agreed; namely, $112,000.

■ It was for the trial court and not the jury to construe the contract. Kintner v. Wolfe, 102 Ariz. 164, 426 P.2d 798 (1967); Arizona Land Title & Trust Co. v. Safeway Stores, Inc., 6 Ariz.App. 52, 429 P.2d 686 (1967).

■ This case was submitted to a jury under instructions requiring a general verdict. The jury brought in a verdict for the defendants, and on appeal most of the contentions revolve around whether the instructions submitted were proper. We see no need to answer these contentions because it is our view that defendants' motion for a directed verdict at the conclusion of all the evidence should have been granted. If there

are critical factual issues as to what the verbiage of the contract is or what the circumstances giving rise to the contract were, these factual issues should be submitted to the jury. But, after all of the evidence is in here, we see no critical factual issue for jury resolution.

Two recent Arizona cases involved release clauses similar to the one in this case. In LeBaron v. Crismon, 100 Ariz. 206, 412 P.2d 705 (1966), suit for specific performance was granted on a contract to convey land. In the contract was a release clause:

" * * * cash payment made *in addition* to the regular annual installments, upon request of the buyers."

The court held:

" * * * the release clause contained in the escrow instruction is sufficient to create a binding obligation between the parties." 100 Ariz., at 210, 412 P.2d at 707.

The court did not elaborate on how the clause was clear, to wit, how the release price was to be applied, but the clause was not contested on that point.

In Lyon v. Big Bend Development Co., 7 Ariz.App. 1, 435 P.2d 732 (1968), the court was requested to give instructions to a receiver concerning an obligation under trust. Beneficiaries under the trust had made arrangements to sell and buy land and included in the arrangement was a statement:

*"It is fully understood by the beneficiaries that the aforementioned release price payments are in addition to those required under Trust No. 504."* (Emphasis in original.)

Said the court:

"Here again the intent of the parties is clearly and unequivocally stated. * * * Although we are unable to find any evidence to explain it, we can only infer that the parties understood these words and intended to emphasize them. It would appear that the trial court allowed parol evidence which contradicted this provision and apparently on the basis of such parol evidence concluded that an ambiguity existed. Extrinsic evidence is admit-

ted to resolve ambiguities, not create them. * * *" 435 P.2d, at 735.

The plaintiffs, in this action, have denied that there was any release clause in the original contract and receipt agreement which was signed by them. The jury was instructed by the court that if the provision was in the contract when signed, they should find for the defendants. The plaintiffs now complain of this instruction.

 It is our view that the result is the same whether the provision was in the agreement or not. If it was not in the original contract then we have only the release clause in the final sales contract which, construed in the light of the other provisions in the contract, is clear and unambiguous. We cannot conceive that this release clause can be intended to radically change the clearly expressed purchase price. And, conversely, if the release clause in the original contract and receipt was in the document when signed by the plaintiffs, then it clearly supports the defendants' position in this case.

Hence in either event, the defendants should prevail.

 Plaintiffs allege error in the trial court allowance of Mr. Eckhardt's testimony. Mr. Eckhardt was not listed as a witness as required by Rule 16, Uniform Rules of Practice for Superior Court, 17 A.R.S.

"* * * No other * * * witnesses shall be used during the trial other than those listed and exchanged, except for good cause shown."

During the trial, the question of Mr. Eckhardt's testimony was heard in chambers and the court ruled the witness could testify. He was made available over the weekend for examination by plaintiffs' counsel.

Recently, in Zakroff v. May, 8 Ariz.App. 101, 443 P.2d 916 (1968), this court held that the trial court had broad discretion under Rule 16. Said the court:

"It appeared that the witness was unknown to the defendants until just before trial. Plaintiff's counsel was thereupon afforded an opportunity to take the witness' deposition and was thus apprised of the testimony that he could give at the trial. We thus see no prejudice to the plaintiff in allowing the witness to testify." 443 P.2d, at 919.

We find that the facts in this case lend themselves to the same holding.

The judgment is affirmed.

MOLLOY and HATHAWAY, JJ., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.