587 P.2d 763

G. S. GIOVANELLI and J. M. Giovanelli, husband and wife, Don C. Chandler and Barbara R. Chandler, husband and wife, E. M. Arndt and Corrine H. Arndt, husband and wife, Appellants,

v.

FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF PHOENIX, a corporation, Appellee.

No. 1 CA–CIV 3276.

Court of Appeals of Arizona, Division 1, Department A.

Sept. 19, 1978.

Rehearing Denied Nov. 3, 1978.

Review Denied Nov. 21, 1978.

Tanner, Jarvis, Owens & Hoyt, Ltd. by Melvin J. Owens/Wallace O. Tanner, Phoenix, for appellants.

Jennings, Strouss & Salmon by Anthony J. Palumbo, Phoenix, for appellee.

## OPINION

DONOFRIO, Judge.

This appeal is brought from the granting of a motion for summary judgment in favor of First Federal Savings and Loan Association of Phoenix, appellee/plaintiff below, and against appellants/defendants below.

Briefly, the facts can be stated as follows:

On March 30, 1971 appellants, Chandler, Arndt and Giovanelli signed a "Continuing Guaranty"[1] with appellee First Federal on

---

1.  "CONTINUING GUARANTY

TO: FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF PHOENIX

(1) For valuable consideration, the undersigned (hereinafter called Guarantors) jointly and severally unconditionally guarantee and promise to pay to FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF PHOENIX (hereinafter called the Association), or order, on demand, in lawful money of the United States, any and all indebtedness of Emerald Properties, Inc., an Arizona corporation (hereinafter called Borrower) to Association. The word 'indebtedness' is used herein in its most comprehensive sense and includes any and all advances, debts, obligations and liabilities of Borrowers or any one or more of them, heretofore, now, or hereafter made, incurred or created, whether volun-

tary or involuntary and however arising, whether due or not due, absolute or contingent, liquidated or unliquidated, determined, or undetermined and whether Borrowers may be liable individually or jointly with others, or whether recovery upon such indebtedness may be or hereafter become barred by any statute of limitations, or whether such indebtedness may be or hereafter become otherwise unenforceable.

(2) The liability of Guarantors shall not exceed at any one time the sum of TWO MILLION AND NO/100 DOLLARS ($2,000,000.00) for principal, together with all interest upon the indebtedness or upon such part thereof as shall not exceed the foregoing limitation. Notwithstanding the foregoing, Association may permit the indebtedness of Borrowers to exceed Guarantors' liability. This is a continuing guaranty relating to any indebtedness, including that

arising under successive transactions which shall either continue the indebtedness or from time to time renew it after it has been satisfied. This guaranty shall not apply to any indebtedness created after actual receipt by Association of written notice of its revocation as to future transactions. Any such revocation of this guaranty at any time or times by one or more of the undersigned guarantors shall not affect the liability hereunder of the remaining guarantors as to any future transactions or indebtedness of the Borrower, but this guaranty shall in all respects remain in force and effect as to such indebtedness and transactions. The death of any Guarantor shall not operate as a revocation of liability hereunder of the estate of any such Guarantor as to transactions entered into or indebtedness created subsequent to such death until actual receipt by Association of written notice of the death of such Guarantor. Each of the Guarantors severally waives notice of revocation given by any other guarantor or guarantors. Any payment by Guarantors shall not reduce their maximum obligation hereunder, unless written notice to that effect be actually received by Association at or prior to the time of such payment.

(3) The obligations hereunder are joint and several, and independent of the obligations of Borrowers, and a separate action or actions may be brought and prosecuted against Guarantors whether action is brought against Borrowers of whether Borrowers be joined in any such action or actions; and Guarantors waive the benefit of any statute of limitations affecting their liability hereunder or the enforcement thereof.

(4) Guarantors authorize Association, without notice or demand and without affecting their liability hereunder, from time to time to (a) renew, compromise, extend, accelerate or otherwise change the time for payment of, or otherwise change the terms of the indebtedness or any part thereof, including increase or decrease of the rate of interest thereon; (b) take and hold security for the payment of this guaranty or the indebtedness guaranteed and exchange, enforce, waive and release any such security; (c) apply such security and direct the order or manner of sale thereof as Association in its discretion may determine; (d) release or substitute any one or more of the endorsers or guarantors. Association may without notice assign this guaranty in whole or in part,

(5) Guarantors waive any right to require Association to (a) proceed against Borrowers; (b) proceed against or exhaust any security held by Borrowers; or (c) pursue any other remedy in Association's power whatsoever. Guarantors waive any defense arising by reason of any disability or other defense of Borrowers or by reason of the cessation from any cause whatsoever of the liability of Borrowers. Until all indebtedness of Borrowers to Association shall have been paid in full, even though such indebtedness is in excess of Guarantors' liability hereunder, Guarantors shall have no right of subrogation, and waive any right to enforce any remedy which Association now has or may hereafter have against Borrowers and waive any benefit of, and any right to participate in any security now or hereafter held by Association. Guarantors waive all presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor, and notices of acceptance of this guaranty and of the existence, creation, or incurring of new or additional indebtedness.

(6) In addition to all liens upon, and rights of setoff against the moneys, securities or other property of Guarantors given to Association by law, Association shall have a lien upon and a right of setoff against all money, securities and other property of Guarantors now or hereafter in the possession of or on deposit with Association, whether held in a savings account, general or special account or deposit, or for safekeeping or otherwise; and every such lien and right of setoff may be exercised without demand upon or notice to Guarantors. No lien or right of setoff shall be deemed to have been waived by any act or conduct on the part of Association or by any neglect to exercise such right of setoff or to enforce such lien, or by any delay in so doing, and every right of setoff and lien shall continue in full force and effect until such right of setoff or lien is specifically waived or released by an instrument in writing executed by Association.

(7) Any indebtedness of Borrowers now or hereafter held by Guarantors is hereby subordinated to the indebtedness of Borrowers to Association; and such indebtedness of Borrowers to Guarantors if Association so request shall be collected, enforced and received by Guarantors as trustees for Association and be paid over to Association on account of the indebtedness of Borrowers to Association but without reducing or affecting in any manner the liability of Guarantors under the other provisions of this guaranty.

(8) Where any one or more of Borrowers are corporations or partnerships it is not necessary for Association to inquire into the powers of Borrowers or the officers, directors, partners or agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed hereunder.

(9) Guarantors agree to pay a reasonable attorneys' fee and all other costs and expenses which may be incurred by Association in the enforcement of this Guaranty.

(10) Any married woman who signs this guaranty hereby expressly agrees that recourse may be had against her separate property for all her obligations under this guaranty.

(11) In all cases where there is but a single Borrower or a single Guarantor, then all words used herein in the plural shall be deemed to

behalf of Emerald Properties, Inc. (Emerald). This document was executed for the purpose of guaranteeing certain loans to be made to Emerald by First Federal. These loans would not have been consummated if appellants had not executed the guarantee.

In August 1971, Emerald borrowed $29,200 from First Federal. The proceeds of this loan were to be used by Emerald in building a condominium on Lot 16, Villa San Marcos, Scottsdale, Arizona. The loan agreement provided for disbursement of loan proceeds in regular draws, as construction proceeded. It, also, provided for a retention of $2,960.00 in an "A" account, and the remaining funds to be disbursed from a "loan-in-process account." Lawyers Title acted as escrow agent for the parties, and the loan was secured by a first mortgage on Lot 16, as well as by the hereinbefore mentioned guarantees.

The following illustrates plaintiff's loss. First Federal's loan settlement statements shows various disbursements in the form of draws made by Emerald and deductions for interest due First Federal continuing until December 30, 1971, at which time there was a balance of $5,346.92 in the "loan-in-process" account, and $2,960.00 in the "A" account. Upon completion, the condominium was sold by Emerald to a Mr. Pinkney for cash, and Lawyers Title, also, acted as escrow agent for the sale. The escrow closing statement is dated February 14, 1972, and it shows that the final proceeds from the sale of Lot 16, after paying the loan and other escrow expenses, were paid to Lawyers Title. Since the buyer did not assume the loan to First Federal, First Federal's mortgage was released of record, and Lawyers Title forwarded to First Federal $21,318.79, the amount it assumed was required to pay off First Federal's loan. Computations on the escrow closing statement show a deduction for the loan proceeds still held by First Federal, to-wit $5,346.92 in the

"loan-in-process" account and $2,960.00 in the "A" account.

At, or about, the same time Lawyers Title was disbursing the $21,318.79 to First Federal, it appears (from First Federal's loan settlement statements) that First Federal was forwarding the balance of the "loan-in-process" and "A" accounts to Lawyers Title.

In other words, Lawyers Title was making a deduction for the funds held by First Federal at, or about, the same time First Federal was forwarding these funds to Lawyers Title. First Federal agrees that due to a mistake in the disbursing department of First Federal, First Federal released an excess of $6,346.92 in construction funds to the Emerald account. Apparently, assuming this amount had been retained by First Federal for repayment of the loan, Lawyers Title made the misapplication of funds to the financially troubled Emerald.

No explanation has ever been made by First Federal as to why the mortgage was released or as to why steps were not taken immediately to recover the funds which were paid by their mistake to Lawyers Title. Correspondence dated January 23, 1973, from Mr. Rubin, counsel for First Federal, to Mr. Ownes, counsel representing defendants stated:

"In response to your letter and specifically to Paragraph 3, you ask the question of why we accepted a Lawyers Title check of $21,318.79 without demanding a return of funds which were passing the other way. The only honest explanation I can give of this is I don't know. As you know, during this particular time, Lawyers, First Federal and Emerald were all scurrying to complete the project in Scottsdale and to disburse all of our funds before Emerald could file its Chap-

have been used in the singular where the context and construction so require, and when there is more than one Borrower named herein, or when this guaranty is executed by more than one Guarantor, the word 'Borrowers' and the word 'Guarantors' respectively shall mean all and any or more of them.

IN WITNESS WHEREOF the undersigned Guarantors have executed this guaranty this 8th day of July, 1971."
[Executed by E. M. Arndt, Corrine H. Arndt, G. S. Giovanelli and J. M. Giovanelli, Don C. Chandler and Barbara R. Chandler and witnessed by H. O. Willits.)

ter XI proceedings back east. I can only assume at this point that the explanation lies in the fact of everyone working furiously to complete the above and having this overlooked."

First Federal made a demand for this sum ($6,346.92) from appellants/guarantors.[2] When not paid they brought the instant suit and obtained summary judgment against appellants. This appeal followed.

Many questions are raised in the briefs. However, we believe the crucial issue is whether there is shown a valid defense of payment by appellants. If it's shown that there is a valid affirmative defense of payment, then the trial court was in error in its ruling and it must be reversed.

█ The trial court must consider all of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits before making its decision on a motion for summary judgment; that is, the entire record must be examined. *Chanay v. Chittenden*, 115 Ariz. 32, 563 P.2d 287 (1977). Likewise, the Court of Appeals, in ruling on the propriety of the summary judgment, must review the whole record to determine whether a material issue of fact exists. *Morrell v. St. Luke's Medical Center*, 27 Ariz.App. 486, 556 P.2d 334 (1976).

In determining this, the evidence and all reasonable inferences drawn therefrom will be viewed in a light most favorable to appellants, the party against whom the summary judgment was rendered. *Poggi v. Kates*, 115 Ariz. 157, 564 P.2d 380 (1977); *Sax v. Kopelman*, 96 Ariz. 394, 396 P.2d 17 (1964); *Serna v. Statewide Contractors, Inc.*, 6 Ariz.App. 12, 429 P.2d 504 (1967).

█ Appellee contends that appellants are not entitled to the defense of payment as it was not raised before the trial court. Granted, that issues cannot be raised on appeal from the granting of summary judgment which were not raised by appellants in their affidavits, depositions or pleadings [*Limberopoulos v. Tom Fannin and Associates*, 17 Ariz.App. 35, 495 P.2d 475 (1972)],

however, in the instant case we do not agree with appellee's contention that this defense was not raised.

Appellants, in at least three instances set forth the issue of payment:

1. The defense of payment was set out in the answer to plaintiff's complaint as follows:

"These Defendants allege the affirmative defense of payment, waiver, estoppel and failure to state a claim for relief."

2. In the response to a request for admission that the principal Emerald did not repay the loan, defendants responded as follows:

"Denied. Plaintiff had access to, or control of, the funds required to pay the loan in full. Plaintiff thus has been legally paid, at least to the extent necessary to release the Defendants on their guaranties."

3. In appellants' response to the motion for summary judgment they argued that:

"Plaintiff's memorandum attempts to distinguish between guaranties which are conditional and those which are unconditional or absolute. It concludes that the guaranties involved in this case were unconditional and are, therefore, presumably subject to no defenses. In other words, Plaintiff's position seems to be that defenses of negligence, release of security, and even actual or constructive payment do not apply where there is an 'unconditional guaranty' as distinguished from a normal guaranty."

█ Two prerequisites must be met before entry of summary judgment is appropriate: First, the record before the trial court must show that there is no genuine dispute as to any material fact and that only one inference can be drawn from those undisputed material facts, and second, based upon the undisputed material facts, the moving party must be entitled to judgment as a matter of law. *Dutch Inns of America, Inc. v. Horizon Corp.*, 18 Ariz.App. 116, 500 P.2d 901 (1972).

**2.** The suit was also brought against Emerald Properties, Inc., which is in bankruptcy court.

We now must consider the merits of appellants' defense of payment that would preclude the granting of summary judgment.

First, it is to be noted that we agree with the statement made in appellee's answering brief that the true import of an agreement and the mutual rights and obligations of the parties thereto, can only be gleaned from a review of the terms and conditions of the contractual agreement, and not by the label of the agreement alone. *Kinter v. Wolfe*, 102 Ariz. 164, 426 P.2d 798 (1967); *Pacific Finance Corp. of California v. Burkhart*, 56 Ariz. 383, 108 P.2d 380 (1940).

Appellants claim payment and appellee argues that there has been only partial payment. A question of payment is *generally* one of fact, and is to be decided by the trier of fact. *International Harvester Co. v. Davotvich*, 42 Ariz. 249, 24 P.2d 375 (1933), and *Albert Steinfeld & Co. v. Wing Wong*, 14 Ariz. 336, 128 P. 354 (1912). However, the facts of the instant case are uncontradicted that Mr. Pinkney paid cash for the property and that the loan was satisfied. This loan included all of the funds advanced for the construction of the condominium and the amount of $6,346.92 sued for in this litigation was a part of this fund. The entire construction fund was presumably paid off when Mr. Pinkney paid his cash to Lawyers Title and it released the lien to give the purchaser clear title.

Not every record which discloses disputed facts precludes the entry of summary judgment if the disputed facts fail to negative the right of the prevailing party to summary judgment as a matter of law. *Weber v. Bates*, 3 Ariz.App. 420, 415 P.2d 135 (1966) [review denied 1966]. It is well settled that a judgment on a motion for summary judgment may be entered either for or against the moving party, even though the opposing party did not file such a motion. *Trimmer v. Ludtke*, 105 Ariz. 260, 462 P.2d 809 (1969).

Appellants argue that if a lender has received a full payment of a loan, but thereafter causes a portion of the funds to be erroneously disbursed it should not be allowed to pursue the guarantors on the loan, regardless of the form of the guaranty. It is well settled that if there is no primary liability on the part of the third party, there is nothing to guarantee and there can be no contract of guaranty. *Dykes v. Clem Lumber Co.*, 58 Ariz. 176, 118 P.2d 454 (1941). Applying this rationale to the instant facts, when First Federal and/or its fiduciary agent Lawyers Title[3], had the total funds in their possession as payment for the loan, the loan was paid and Emerald was no longer liable under its borrowing agreement on the Scottsdale property. As this loan agreement was no longer executory, but now complete, both Emerald and the guarantors were relieved of liability as a matter of law from this agreement. The facts are clear and uncontroverted that First Federal and/or Lawyers Title had the funds and Lawyers Title made application of the funds as full payment of the outstanding loan to Emerald on this property for construction of the condominium.

We are persuaded by the language of a Virginia Federal District Court case and hereby adopt the following language as part of the law of this case:

> "Once a creditor has applied a payment to an obligation for which a surety or guarantor is bound, the latter is discharged to the extent of the payment, and the creditor may not thereafter alter or modify such application." *Reserve Insurance Company v. Gayle*, 393 F.2d 585, 589 (Fourth Circuit, 1968).

Finding that there was payment as a matter of law, we must now determine whether or not the misapplication of funds is covered by the continuing aspect of the guarantees.

This Court recognizes that a person can execute a contract of guaranty making

---

3. *Kresse v. Ryerson*, 64 Ariz. 291, 169 P.2d 850 (1946); *Tucson Title Ins. Co. v. D'Ascoli*, 94 Ariz. 230, 383 P.2d 119 (1963); *Buffington v.* *Title Ins. Co. of Minnesota*, 26 Ariz.App. 97, 546 P.2d 366 (1976); and *Higgins v. Kittleson*, 1 Ariz.App. 244, 401 P.2d 412 (1965).

himself liable for future debts to be incurred by another. We must now determine if the approximately $6,000 misapplication is a debt contemplated by appellants' contracts of guarantee.

It is well settled that it is the court's responsibility to determine if the contract is ambiguous, as it is a question of law [4], and the mere fact that the parties disagree as to the meaning of the contract terms does not, in and of itself, establish that an ambiguity exists. *Grossman v. Hatley*, 21 Ariz.App. 581, 522 P.2d 46 (1974). We find no ambiguity to exist in the contracts in question. Thus, we must now construe the terms of the contract from the four corners of the contract in our determination of this second problem.[5]

As we have previously set forth there must exist a primary obligation on the debtor before there is an obligation on the part of the guarantor. When Lawyers Title misapplied the funds to Emerald no such obligation was created.

Though the terms of the guaranty are of the broadest scope they do not contemplate the coverage the appellee here seeks. Indebtedness, even in its broadest terms, has as an essential characteristic the obligation of the debtor to repay.[6] A California case has defined the term "indebted" as follows:

> "The term 'indebted' means that a complete and absolute liability exists—complete and absolute to the extent that ultimate payment must be made * * *." *Provident Mut. Building–Loan Ass'n v. Davis*, 143 Cal. 253, 76 P. 1034–5 (1904).

The facts on the instant case do not show an express or implied contract on the part of Emerald to repay any of the misapplied funds. First Federal's recourse is no doubt, an equitable suit against Emerald for unjust enrichment. We cannot see where this is a liability, indebtedness, or obligation which is contemplated by the appellants' contracts of guarantee. As a note, First Federal may also have a cause of action against Lawyers Title for a breach of a fiduciary duty.

For the above-stated reasons this Court finds that it was error for the trial court to enter summary judgment in favor of the appellee and to assess attorney's fees against appellants. This Court finds that as a matter of law summary judgment should be entered in favor of appellants.

The judgment is reversed with directions to the trial court to enter judgment in favor of appellants.

Reversed and remanded with directions.

NELSON, J., concurs.

HAIRE, Presiding Judge, concurring in part and dissenting in part:

Because in my opinion the record reveals disputed issues of fact (or facts from which conflicting inferences might be drawn) as to appellant's affirmative defense of payment, I would reverse and remand this matter to the trial court for further proceedings. I therefore concur in the reversal of this matter, and dissent from the majority's direction that judgment be entered for the appellants.

---

4. *Slater v. Westland*, 27 Ariz.App. 227, 553 P.2d 1212 (1976)

5. *Sleizer v. Arizona Title Ins. & Trust Co.*, 9 Ariz.App. 361, 452 P.2d 526 (1969); and *Hofmann Co. v. Meisner*, 17 Ariz.App. 263, 497 P.2d 83 (1972).

6. See: *Allen v. Van Buren Township of Madison County*, 243 Ind. 665, 192 N.E.2d 316 (1963).