453 P.2d 245

Donald F. ZIMMER, Appellant,

v.

Abe SALCIDO, Appellee.

No. 1 CA–CIV 490.

Court of Appeals of Arizona.

April 14, 1969.

As Amended April 15, 1969.

Rehearing Denied May 12, 1969.

Review Denied June 10, 1969.

O'Connor, Cavanagh, Anderson Westover, Killingsworth & Beshears, by John H. Westover and Gerald L. Jacobs, Phoenix, for appellant.

Robert D. Stauffer, Tucson, and W. H. Chester, Phoenix, for appellee.

STEVENS, Judge.

This case relates to a "vanishing issue", the effect of a 1961 enactment of the Legislature terminating the privilege of leasing liquor licenses.

The two basic questions presented on this appeal are: First, whether it was reversible error for the trial court, over the objections of the parties, to discharge the jury and decide the case as though tried to the court; and

Second, the effect of the 1961 enactment of A.R.S. § 4–203, subsec. E (thereafter further amended) upon a single lease agreement covering both a liquor license and real property where the license had been transferred to a new location pursuant to a supplemental agreement.

In the First Special Session of the 1961 Arizona Legislature, Chapter 2 was enacted relating to alcoholic beverages. The portion of the Chapter which is of particular interest in this appeal is A.R.S. § 4–203, subsec. E which reads as follows:

> "No spirituous liquor license shall be assigned, transferred or sold, except as provided for in this title. No spirituous liquor license shall be leased or subleased, *except* that for the purpose of preserving rights and duties that have already matured, any licensee who has leased a spirituous liquor license under a lease in effect on the effective date of this subsection shall, after examination of such lease by the superintendent, be permitted to continue the lease according to its terms, and the license shall revert to the lessor upon expiration of the lease, or upon any termination of the lease, or by December 31, 1963, whichever is sooner. (Emphasis Added).

This section was then again amended in 1967 by eliminating the exception. The 1967 amendment is not of interest in this appeal.

There are three Arizona cases of particular interest. These are Hooper v. Duncan, 95 Ariz. 305, 389 P.2d 706 (1964) appeal dismissed, 379 U.S. 27, 85 S.Ct. 186, 13 L.Ed.2d 173 (1964); Ong v. Abbott, 96 Ariz. 277, 394 P.2d 208 (1964) and Kintner v. Wolfe, 102 Ariz. 164, 426 P.2d 798 (1967). The Supreme Court's opinion in *Kintner* vacated an earlier opinion of the Court of Appeals which was reported 4 Ariz.App. 212, 419 P.2d 116. *Hooper* upheld the constitutionality of the 1961 Legislature Act. *Ong* held that even after the effective date of the Act and until the cut-off date of 31 December, 1963 specified in the Act, a lease would be upheld while the lessee was using the liquor license. *Kintner* upheld a guarantee of the contemplated lessor's income expected to be derived from the lease of a liquor license.

In the case before us Salcido was the owner-lessor of a liquor license together with a Washington Street property wherein the sale of liquor was conducted. Zimmer was the buyer-lessee of the liquor license and the lessee of the real property in question. After the lease had been in effect it was modified to permit Zimmer to change the location of the license. He continued as the lessee of the building and fixtures. Zimmer secured a license in his own name. The Legislative Act came into effect. Zimmer ceased paying rent on the real property and on the license. The building came into disrepair. Salcido filed suit. All of the evidence was presented to a jury and at the conclusion of the evidence the trial court, over objection of both parties, discharged the jury. The trial court made findings and rendered a money judgment in favor of Salcido.

Zimmer appealed. He urges error in the discharge of the jury and other matters. Salcido, while not satisfied with the monetary award, was willing to forgive any trial court error and collect his judgment in place of an appeal.

## DISCHARGE OF JURY

The record discloses a number of disputed facts. The Arizona Constitution provides for trial by jury unless waived. Rules 38 and 39, Rules of Civil Procedure, 16 A.R.S. relate to jury trials. It is well settled that where there are controverted issues of material fact the issues must be

submitted to the jury for its determination. Greer v. Goesling, 54 Ariz. 488, 97 P.2d 218 (1939); Vigil v. Herman, 102 Ariz. 31, 424 P.2d 159, (1967). This rule is applicable to equity cases even though the jury sits in an advisory capacity. *Greer*; Hammontree v. Kenworthy, 1 Ariz.App. 472, 404 P.2d 816 (1965).

In our opinion it was reversible error to discharge the jury and this case must be remanded for a new trial.

## THE LEASE

In our opinion some phases of this case can be settled by this opinion and some issues must be resolved in the new trial.

On 26 October, 1955 Salcido and Zimmer entered into a written contract. This was a 5-year lease effective 1 December, 1955. The lease period was from 1 December, 1955 to 30 November, 1960. Zimmer had the option to renew the lease if the option was exercised at least six months before the lease expired. The lease related to a going business consisting of a No. 9 liquor license and the premises wherein the business was conducted on Washington Street in the City of Phoenix. The lease included the furniture and fixtures. The agreement contained an option whereby Zimmer had the privilege of buying the license and the premises for the sum of $65,000. Zimmer also had the option of purchasing the license for $26,000 if the option was exercised before the person-to-person transfer of the license had been authorized by the Superintendent of the State Liquor Department. In the event the purchase of the license was exercised the rental on the premises was to be $150 a month.

On the same day an application for a person-to-person transfer of the license was executed. Express reference was made to the written agreement. In the application Salcido was described as the "lessor-seller" and Zimmer as the "lessee-buyer".

On 28 November, 1955 the person-to-person transfer was approved and the license was issued in Zimmer's name for use at the Washington Street location.

On 21 January, 1957, Zimmer executed a broad power of attorney to his brother.

On 24 January, 1957, pursuant to Zimmer's desire to transfer the license to his own outlet on Camelback Road in the City of Phoenix, a supplemental agreement was entered into. The monthly rental for the license and for the Washington Street premises remained unchanged. Zimmer continued to be Salcido's tenant of the Washington Street property with the privilege of subleasing the same. With minor exceptions the 1955 agreement was reaffirmed.

On the same date under the power of attorney, Zimmer's brother executed a document which is found in the files of the Liquor Department. This document relates to the requested location change application and expressly recites both the 26 October, 1955 and the 24 January, 1957 agreements.

On 19 January, 1957 the Liquor Department approved the location transfer. This discrepancy as to dates is not explained.

After the location transfer to Zimmer's property on Camelback Road, Zimmer continued to hold the Washington Street property and in his capacity as landlord he leased the Washington Street premises to various persons. The record is not clear as to the sequence of tenants or as to their dates of occupancy. In late 1957 or early 1958 Zimmer's father came to Phoenix and shortly after his arrival he became associated with the Zimmer liquor outlet on Camelback Road.

Effective January 1, 1960, the Salcido license in the name of Zimmer was renewed for the year 1960 at Zimmer's request.

On 7 June, 1960 Zimmer applied to the Liquor Department for his own No. 9 license for use at the Camelback Road location.

On 24 June, 1960 Zimmer gave written notice of his election to exercise the option to renew the lease. Salcido testified that he requested that the lease be not renewed

and that the license be returned to him. This testimony was not refuted.

Effective 1 January, 1961, on Zimmer's request, the Salcido license was renewed for the year 1961.

On 4 January, 1961 a check in the sum of $2450 was sent by Zimmer to Salcido this being the money necessary to complete the exercise of the option to renew and being the rent for the first month and the last six months of the new 5-year period which would expire on 30 November, 1965.

10 February, 1961 is the date that the new No. 9 liquor license was issued to Zimmer in his own right.

On 10 April, 1961 Zimmer's father, who had assumed the management of the Camelback Road establishment and who the record discloses was authorized to speak for Zimmer, had a telephone conversation with Salcido. The father advised Salcido that since Zimmer had his own license Zimmer desired to cancel the lease of the liquor license. There was no contractual right to do so. The conversation is silent with reference to the Washington Street premises. Salcido is reported to have replied that he desired the opportunity of selling the license and that he requested that the father wait for further word from Salcido.

14 June, 1961 is the date that the Governor of Arizona issued a call for a Special Session of the Legislature. Page 467, Laws of 1961. The call was for the dual subjects of narcotics and liquor. The Legislature was called for 17 July, 1961. On that date the Legislature convened and the Governor delivered his message. Page 477, Laws of 1961.

On 7 August, 1961 the Legislature had completed its labors with reference to the proposed liquor legislation. On that date the Governor approved the bill and it was filed with the Secretary of State. It is this Act which contains the above quoted A.R.S. § 4–203, subsec. E, the section so vital to this litigation.

In *Hooper* on page 307 of 95 Ariz., 389 P.2d 706, the Supreme Court indicates that the Act became effective on 29 October, 1961 and in *Ong* on page 280 of 96 Ariz., 394 P.2d 208, the Supreme Court indicates that the Act became effective on 31 October, 1961. This difference in dates is not material to this opinion.

On 7 September, 1961 prior to the effective date of the Act and again not authorized by the written agreements between the parties but apparently in a follow up of the 10 April conversation the father on behalf of Zimmer wrote a letter to Salcido stating:

"As we are unable to place this license, we find it necessary to transfer it back to you.

We will pay the transfer fee."

This letter was received by Salcido's secretary who was authorized to open his mail.

On 18 September, 1961 a registered mail return receipt was signed on behalf of Salcido. The fair interpretation of the evidence is that by this communication a form of application for the transfer of the license back to Salcido was executed on behalf of Zimmer and that check in payment of the transfer fee was mailed along with the application. The license itself was not enclosed and remained in Zimmer's possession. Salcido did not return the application for retransfer or the check in payment of the transfer fee but retained them until he used them to apply for a retransfer late in 1963. Again it must be remembered that the Legislative Act had not become effective and that as of this date the contracts between the parties were in all respects legal and binding. There was no severance clause in the 1955 writing or in the 1957 writing and there is no indication that Zimmer tendered back the Washington Street premises.

Rent was not paid. In early 1962 Salcido demanded his rent and was told that it would eventually be paid.

On 5 March, 1962 Salcido was adjudged guilty of two offenses, one, attempted grand theft for which he was placed on probation and the other, perjury for which he was fined $500.

On 16 May, 1962 Zimmer requested that the Liquor Superintendent renew the Salcido license applying for a six months extension in relation to a license not in use.

On 14 June, 1962 Salcido filed the suit which is the basis of this appeal.

The record does not contain a copy of the renewal application for 1963 but supports a single conclusion and that is that Zimmer paid the 1963 renewal license fee for the Salcido license.

Prior to the trial and on a date which is not clear in the record, probably in the year 1963 one Taylor was a tenant of Zimmer at the Washington Street premises. Apparently the Internal Revenue Service sold certain personal property belonging to Salcido, and a part of the leased premises, to satisfy a Taylor tax lien. Apparently thereafter the premises were substantially abandoned with damage to the contents and to the building.

On 6 December, 1963 Salcido executed a request that the license be transferred back from Zimmer to Salcido. The evidence supports the conclusion that this is the document which he received on 18 September 1961 and that he used the check which he received on the same date. As a result of this application and in March, 1964 the license was reissued to a party to whom Salcido had negotiated a transfer.

Prior to March, 1965 Salcido lost the Washington Street property. The evidence indicates that this came about in the following manner. These statements are an observation and are subject to proper pleadings and proof on retrial. Salcido assigned his rents in 1957 to a title company, the rents to be applied on a mortgage on real property which mortgage Salcido had executed in favor of Baldwin. The rents were not paid under the contract between the parties to the action. The mortgage became in arrears at a date which is not established in the record. Baldwin secured a deed in lieu of foreclosure. In the meantime the property had become in a state of disrepair and some of the personal property had been removed or damaged.

In March, 1965 Baldwin, as the new owner of the Washington Street property, leased the premises in the then state of disrepair to Myles for $150 a month.

The Superior Court trial commenced on 1 November, 1965.

█ We hold that prior to the effective date of the 1961 Legislative Act Zimmer, as the lessee of the license, had no legal right to surrender the same to Salcido. After the effective date of the Act he retained the license in his possession and took no steps to surrender the same it being Zimmer's privilege under the Act to terminate the lease arrangement at his discretion prior to the cutoff date of 31 December, 1963.

██ Zimmer urges that there is no showing of any legal right in the Liquor Department to renew the Salcido license after the effective date of the Legislative Act. With this we disagree. The Superintendent was fully informed as to the lease arrangement between Salcido and Zimmer. This is shown by documents produced by the Liquor Department even though among them there were not produced the 1955 or 1957 writings. When Zimmer paid the annual renewal fees the Superintendent was entitled to conclude that Zimmer elected to continue under the lease for the maximum period, that is to say until 31 December, 1963. Had Zimmer wished to protect himself in relation to the lease of the liquor license after the effective date of the Act, it was within his power to do so. We hold that Zimmer was obligated to pay the rent called for in the agreements until Salcido elected to act by executing the September 1961 tendered transfer document. Salcido acted on 6 December, 1963.

█ The writings of 1955 and January 1957 were not severable in that there was no intent to fix one rental figure for the license and another rental figure for the Washington Street property except under the contingency that Zimmer purchased the license prior to the effective date of the lease transfer under the 1955 agreement.

This event did not come into being. The $150 a month rental for the Washington Street property was contingent upon the payment of $26,000 for the outright purchase of the license and was not necessarily the reasonable monthly rental for the Washington Street property.

We are not called upon to decide what the legal situation would have been had there been no location transfer of the license. The license and the Washington Street property were physically separated in 1957. Zimmer retained the Washington Street property and his obligations toward that property continued in effect with the privilege of subleasing. Under these circumstances the Legislature's termination of the liquor lease privilege did not terminate the obligation to pay a reasonable monthly rental on the Washington Street property or the other obligations with reference to the property. In our opinion our holding in this respect is consistent with the opinion of the Arizona Supreme Court in *Kintner*. We are not in a position to set forth a formula or to fix an amount which should be paid as and for rent for the Washington Street property up to the time that Salcido lost his ownership interest in the property. We are not called upon to decide whether Salcido was damaged in his property rights by the failure to pay rent or whether the pleadings will support that possible issue.

This cause is reversed with instructions to grant a jury trial unless both sides consent to a trial to the court. The issues to be tried are the measure of the recovery to which Salcido was entitled. The trial court is authorized to undertake other proceedings not inconsistent with this opinion.

DONOFRIO, C. J., and CAMERON, J., concur.