462 P.2d 102

**Luis LUGO, L. F. George and Marie George, Appellants,**

**v.**

**Harold H. MOORE, Superintendent of the Department of Liquor Licenses and Control for the State of Arizona, Lee Little, Tom Mason and Col. William Alberts, Members of the Board of the Department of Liquor Licenses and Control for the State of Arizona, and Farmers Produce Co., Inc., dba Farmers Quality Liquors, Appellees.**

**No. 1 CA–CIV 972.**

Court of Appeals of Arizona,
Division 1.

Department A.

Dec. 8, 1969.

Rehearing Denied Dec. 19, 1969.

Review Denied Jan. 20, 1970.

Norman E. Green and David M. Berman, Phoenix, for appellants.

Gary K. Nelson, Atty. Gen., by James S. Tegart and Malcolm P. Strohson, Asst., Attys. Gen., for appellees, Superintendent and Board.

Charles E. Marshall, Phoenix, for appellee, Farmers Produce Co., Inc.

STEVENS, Judge.

In June 1967, Mr. and Mrs. George, appellants, referred to hereinafter as George, "sold" a liquor license and some items of liquor to Luis Lugo, also an appellant and hereinafter referred to as Lugo, by bulk sale. The sale involved a location-to-location transfer and a person-to-person transfer. The State Liquor Board declined to approve these transfers. On appeal to the Superior Court the action of the State Liquor Board was affirmed. On appeal to this Court we are called upon to review the action of the Superior Court and of the State Liquor Board. This consideration by us requires a partial review of certain statutes.

In 1967 the Arizona Legislature adopted Chapter 133, effective 1 July 1967. See § 33 of the Act. The Act was an extensive revision of the Arizona law relating to alcoholic beverages. The portions of the Act relating to the transfer of licenses is of particular interest in this case. Although the sale was initiated before the effective date of the 1967 Act, the major procedural steps occurred after 1 July and all parties urge their respective positions pursuant to the 1967 Act. With this we agree. In this opinion all citations to sections of the Arizona Revised Statutes (A. R.S.) will be to those sections as amended by the 1967 Act unless the contrary expressly appears.

Before going further in the presentation of this opinion, we wish to make it clear that there is nothing in the record before us which in any way casts any adverse reflection upon Lugo. The record in no way questions his full qualifications and fitness to hold a license to dispense alcoholic beverages.

The 1967 Act was not the only recent major change in our liquor laws. See Ch. 2 of the 1961 First Special Session of the Arizona Legislature. This Act can be found beginning on page 498 of the volume of the Session Laws of Arizona which contains the 1962 Session Laws and the 1961 First Special Session Laws. One of the major effects of the 1961 Act was to change the character of a liquor license so that it was no longer subject to lessor-lessee contracts. Hooper v. Duncan, 95 Ariz. 305, 389 P.2d 706 (1964). See also Zimmer v. Salcido, 9 Ariz.App. 416, 453 P.2d 245 (1969), review denied.

In connection with transfers of licenses from person-to-person, the person to whom a license is transferred must meet the qualifications of an original applicant. As before stated, we do not have this issue before us.

In location-to-location transfers, the new location must meet the same tests which are applied to the location which would be in question in relation to an original application for a new license. The test under A.R.S. § 4–203, prior to the 1961 Act, was "that the public convenience requires and will be substantially served" by having that class of license at that location. The 1961 Act amended A.R.S. § 4–203 to state the test to be "that the public convenience requires *or* that the best interest of the community will be substantially served." (Emphasis supplied.) This same section was amended by the 1967 Act and the test under the present A.R.S. § 4–203, subsec. A is stated to be "that the public convenience required *and* that the best interest of the community will be substantially served." (Emphasis supplied.) In each instance

there must be a "satisfactory showing," and this requirement calls for the exercise of sound judgment by the fact finding agency.

Prior to the 1967 Act, there was an appeal procedure to the Superior Court. Under A.R.S. § 4–210, subsec. C, before the appeal procedure was amended in the 1967 Act, the Superior Court was directed to "hear and determine the matter de novo" on appeal. Under the 1967 Act we find that A.R.S. § 4–211, subsec. C specifies that the Superior Court exercises its appellate jurisdiction in a manner which we believe to be akin to certiorari. We quote this subsection in part:

"C. The court shall review the hearing without a jury on the basis of the transcript and exhibits, except that in case of alleged irregularity in procedure by the board not shown by the transcript, the court may order testimony to be given thereon. * * * The court may affirm the decision of the board, remand the matter for further proceedings before the board, or reverse or modify the decision if it finds that the objection of the person aggrieved is well taken on any of the grounds stated."

This subsection further provides for appeals to the Court of Appeals.

The 1967 Act created a State Liquor Board of three members. The office of "Superintendent" of the Department of Liquor Licenses and Control was continued. Prior to the 1967 Act the Superintendent exercised the discretionary functions with reference to licenses. These responsibilities were divided by the 1967 Act, some being exercised by the Superintendent and some by the Board.

Various types of licenses in relation to alcoholic beverages have been defined by numbered subsections of the statutory sections and they are commonly referred to by the number of the subsection. These designations are set forth in connection with the issuance fees for original licenses and in connection with the annual renewal fees. We quote a portion of A.R.S. § 4–209, subsec. B as follows:

"6. On-sale retailer's license to sell all spirituous liquors by individual portions and in the original containers, one thousand five hundred dollars.

"7. On-sale retailer's license to sell wine and beer by individual portions and in the original containers, two hundred dollars.

* * * * * *

"9. Off-sale retailer's license to sell all spirituous liquors, one thousand dollars."

A.R.S. § 4–203, subsec. D, as it appeared in the 1961 Act, authorized a person-to-person transfer of liquor licenses "provided such transfer includes a bona fide bulk sale of the entire business and stock in trade." The statutory authorization for person-to-person transfers was enlarged by the 1967 Act and is now found in A.R.S. § 4–203, subsec. C. The quoted portion of the 1961 Act was carried forward into the 1967 Act.

At the times in question the Arizona statutes with reference to bulk sales was found in A.R.S. § 44–1021. The statute read, in part:

"A. No person in the business of buying commodities and selling them in small quantities for purposes of profit shall, at a single transaction and not in the regular course of business, sell, assign or deliver seventy-five per cent or more of his stock in trade, unless * * *."

This section was repealed effective January 1, 1968 by the Uniform Commercial Code. See § 6 of Ch. 3 of the 1967 Session Laws, particularly page 229 of the volume published by our Secretary of State. This observation does not have a bearing upon the issues before us and is made only for the reason that we now express no opinion as to the effect of its repeal upon the above-referred to A.R.S. § 4–203, subsec. C contained in the 1967 Act relating to alcoholic beverages.

For some time George conducted a grocery business in Buckeye, Maricopa County, Arizona. In connection with his grocery business he held and used the No. 9 license here in question. This license au-

thorized him to sell all types of spirituous liquors in containers for off-premises consumption. In August 1966 the George Grocery Store burned down, a fact to which Lugo testified. A small stock of spirituous liquors was saved, the quantity and value thereof not being a matter of evidence. At the time of the hearing before the State Liquor Board, George was vacationing out of the state and did not testify. There is no evidence in the record that George ever reentered the grocery business or ever used his No. 9 license after the August 1966 fire. The license was renewed in January 1967.

In Phoenix, Maricopa County, Lugo's business was a pizza parlor. In connection with this business he held and used a No. 7 license which authorized the sale of beer and wine for both on-premises and off-premises consumption. He had held this license for some years. His initial application had been denied by the Superintendent. Lugo took the matter to the Superior Court and was granted the No. 7 license. Slightly more than two years before the events now in question, Lugo had attempted to secure a No. 9 license. This application also went to court and his efforts were unavailing. The Superior Court ruled that Lugo "did not present sufficient evidence to show to the satisfaction of the Court that the public convenience or the best interest of the community involved would be served by permitting the transfer of the license to the new location." At that time there was no right of appeal beyond the Superior Court.

In Phoenix, close to Lugo's place of business, Farmers Produce Co., Inc., dba Farmers Quality Liquors held a No. 9 license and operated a business selling all types of packaged alcoholic beverages for off-premises consumption as well as soft drinks and perhaps other minor items. Farmers had held and used this license at the same location for a number of years. At the time in question there was a cocktail lounge across the street from Lugo's place of business which held a No. 6 license. This license authorized the sale of all types of alcoholic beverages for both on-premises and off-premises consumption.

It was in this setting that Lugo, in about mid-June 1967, through the services of Jack Shragge, negotiated the purchase now in question. Shragge is licensed to sell real estate. There was a bulk sale notice which complied in form with the Arizona statutes, and thereafter, the mechanics in connection with a bona fide bulk sale were completed. There were proper applications filed with the Department of Liquor Licenses and Control for both a location-to-location and a person-to-person transfer of the George No. 9 license. The applications were properly presented to the governing body of the City of Phoenix. A.R.S. § 4–201.

At this point, we digress a moment for further consideration of the statutes. Farmers is a "person" within the definition contained in A.R.S. § 4–101(12). However, "persons" who are eligible to present petitions for or against an application before the governing body of the city must be natural persons. A.R.S. § 4–201, subsec. B requires that the applications be posted

"* * * with a statement requiring any person who is a bona fide resident of the age of twenty-one years or more residing, owning or leasing property within a one-half mile radius from the premises proposed to be licensed, and who is in favor of or opposed to the issuance of the license, to file written arguments in favor of or opposed thereto with the clerk within twenty days after the date of posting."

There were petitions presented to the governing body of the City, 420 signatures in favor and 446 signatures protesting the transfer to the Lugo business location.

A.R.S. § 4–201, subsec. C is as follows:

"C. The governing body of the city or town shall then enter an order recommending approval or disapproval and shall file a certified copy of the order with the board. If the recommendation is disapproved, then a statement of the reasons shall be attached to the order. All

petitions submitted to the governing body within the twenty-day period for filing the protest shall be transmitted to the board with the certified copy of the order."

On 11 July 1967 the governing body of the City of Phoenix approved both transfer applications and a certified copy of each approval was delivered to the State Liquor Department on the same day. The balance of the City of Phoenix file containing the petitions, both favorable and unfavorable, was delivered to the State Liquor Department on 12 July. After approval by the governing body of the City, A.R.S. § 4-203, subsec. D authorizes the designated representative of the State Liquor Department to approve the transfer. This section further provides:

"3. The decision of the designated representative of the board on any transfer shall not become final until ten days after such decision is made by the designated representative of the board."

By letter dated 20 July 1967, the Superintendent wrote to Lugo as follows:

"Your applications to transfer a Series 9 license to you from L. F. George and Marie George and to a location known as Lugo's Pizza, 3619 West McDowell Road, Phoenix, from 308 Monroe Avenue, Buckeye are approved and I am enclosing the permits allowing you to operate under the transferred license.

"Please be reminded that these permits must be prominently displayed together with the 1967 license upon the licensed premises."

There is an appeal procedure within the Department when a decision is made by the Superintendent. This is found in A.R.S. § 4-203, subsec. D, par. 2 which reads as follows:

"2. Any person may appeal to the board on the decision of the designated representative of the board to grant or deny such transfer, provided that such appeal is filed in writing and in detail with the board within ten days after the decision of the designated representative of the board is made, and the decision of the designated representative of the board shall be suspended until the determination of such appeal by the board."

It should be noted that the term "person" as used in this subsection is not restricted as in A.R.S. § 4-201, subsec. B heretofore quoted in part. It includes corporations. Farmers, a corporation, filed its notice of appeal from the decision of the Superintendent to the State Liquor Board on 27 July.

■ It is urged by the appellants that the appeal within the Department was not timely. It is urged that the Superintendent made his decision on 11 July when the approvals by the City were delivered to the Department and that therefore more than ten days expired before Farmers filed its notice of appeal. We cannot agree for two reasons: First, the evidence discloses that when the certified copies of the approval by the City were delivered to the Superintendent on 11 July, the Superintendent stated that he would give his decision on the license "possibly nine or ten days later." The second and more compelling reason is that decisions of public officials which are subject to review by an appellate procedure cannot legally be made and cannot legally be effective until the record of the decision has been entered. We know not when the Superintendent may have made up his mind. We hold as a matter of law that the decision was made on 20 July. The Farmers appeal was timely.

Unfortunately the 20 July letter did not expressly inform Lugo that the Superintendent's decision "shall not become final until ten days after such decision" [A.R.S. § 4-203, subsec. D, par. 3], nor did the letter inform Lugo of the right of appeal within the Department and of the consequences of such appeal. A.R.S. § 4-203, subsec. D, par. 2. The Superintendent's failure to so notify Lugo did not change the legal effect of the statute. It is interesting to note, although it probably has no legal significance, that Farmers lodged a

statement with the Superintendent on 13 July evincing its resistance to the granting of the requested transfers.

Lugo testified that after the receipt of the 20 July letter and in reliance thereon he expended funds. He had theretofore made a $500 good-faith payment in connection with the sale from George. He then paid the $3,000 balance which had been agreed to be paid as the purchase price for the license. He testified that he was obligated to buy the liquor George had on hand but Lugo did not have an inventory thereof nor did he have knowledge as to the price to be paid. Lugo testified that after 20 July, he remodeled his premises, purchased a $1,500 stock of liquor, and thereafter commenced sales under the No. 9 license. He testified that he expended an excess of $6,000 which he could ill afford. From his testimony he acted in good faith. He inquired of a Department employee as to his status. He was not told that he could not sell. He ceased selling pursuant to the No. 9 license after he was notified to so do by a Department agent. We are confident that this activity on the part of Lugo did not determine or affect the eventual decision of the Department.

■ Lugo urges that the Department is estopped to deny the validity of the transfer to him. We cannot agree. He is presumed to know the law. There is an indication in the record that the 1967 Act had been distributed to him as a license holder prior to the time in question. It is possible that knowledgeable advice was not given to him in connection with the new law because it had been in effect such a short period of time. Unfortunately he was bound by the law, new though it was.

■ Our next problem arises in connection with the manner in which the hearing was conducted by the Board. A.R.S. § 4–111, subsec. B, provides for a board of three members. A.R.S. § 4–111, subsec. C provides in part:

"A majority of the board shall constitute a quorum, but no decision of the board on any matter shall be valid unless made upon the concurrence of a majority of the members."

The Board hearing in question commenced on 23 August 1967 with two members present. The hearing was not concluded on that day and when it was proposed to recess to the next day it was announced that only one Board member could be present on the 24th of August. Farmers objected in the absence of a stipulation to proceed. It was agreed that the Board would review the record before ruling. It was then stipulated that the hearing could proceed on the 24th before one member, with the Board reviewing the record before ruling. And the hearing did so proceed the following day. On 11 September both transfers that is the location-to-location and the person-to-person transfers, were "cancelled" by the Board. This action by the Board was signed by all three members. While we do not encourage this procedure, we hold that there was no jurisdictional defect, and that the hearing could be conducted by one member of the Board on express stipulation. The record reflects that not only did a majority concur but that all of the members of the Board concurred in the action that was taken.

We recognize that a portion of the law authorizes certain types of hearings to be conducted by the designated representative of the Board and that the hearing in question does not come within the statutory authorization. A.R.S. § 4–210, subsec. A. There was no effort by the two members of the Board who were present on 23 August to constitute the one Board member who was present on 24 August as the designated representative of the Board.

The action of the Board recites the following findings:

"After due consideration the Board finds that the transaction between appellees (that is between George and Lugo) was not a bona fide bulk sale of the entire business and stock and trade as provided in Section 4–203, Title 4, Arizona Revised Statutes, as amended, and that the public convenience did not require and

that the best interest of the community would not be substantially served by the issuance of the transfers."

Under the circumstances presented with reference to the claimed bulk sale, that is to say the August 1966 fire and the June 1967 sale, not of a going grocery store business which included a No. 9 license but of only the No. 9 license and a limited stock of liquor, we entertain serious doubts that the sale was a bulk sale of a "business of buying commodities and selling them in small quantities for purposes of profit" as required by A.R.S. § 44–1021 prior to its repeal. We also question whether the sale was a bulk sale "of the entire business and stock in trade" as required by A.R.S. § 4–203, subsec. C. We do not deem it necessary to decide this question in view of the later repeal of this section and in view of the evidence in relation to public interest and the best interest of the community.

There was a timely appeal to the Superior Court for Maricopa County and after a review of the record, the Board was "affirmed." On timely appeal to this Court we have reviewed the record using as our guidelines the guidelines given to the Superior Court by A.R.S. § 4–211, subsec. C heretofore quoted.

We do not deem it necessary to set forth in detail the evidence which was presented on both sides in connection with the hearing before the State Board. We have reviewed the evidence in detail in connection with the preparation of this opinion. It is our opinion that the record sustains the Board's finding of an absence of a "satisfactory showing * * * that the public convenience required and that the best interest of the community will be substantially served by the issuance." A.R.S. § 4–203, subsec. A.

The judgment of the Superior Court affirming the action of the State Liquor Board is affirmed.

DONOFRIO, P. J., and CAMERON, J., concur.